Exhibit A

COMMONWEALTH OF MASSACHUSETTS

WORCESTER SS.                    SUPREME JUDICIAL COURT

No. SJC-----

Steven M. Putnam, Petitioner

-v-

Nelson B. Alves, Superintendent, Respondent

PETITION FOR A WRIT OF HABEAS CORPUS

The petitioner, appearing Pro Se, petitions
this Honorable Court for his immediate release from
prison based on the misconduct of the Commonwealth,
which committed fraud on the Court by withholding
evidence after the Supreme Judicial Court ruled in
his favor in a G.L. c. 278A claim.  Commonwealth v.
Putnam, 481 Mass. 1045 (2019) [Appendix One, pp.
1-4]

G.L. c. 248 §1:

>    "Whoever is imprisoned or restrained of his
>    liberty may. as of right and of course, prosecute
>    a writ of habeas corpus, according to this
>    chapter, to obtain release from such imprisonment
>    or restraint if it proves to be unlawful, ... "
>
>    See,[Appendix Two, p. 1]
>
>    The writ may issue as a matter of discretion
>
>    under G.L. c. 248 §25. [Appendix Two, p. 6]

Habeas                     -2-                Putnam

See, Petition of Needel, 344 Mass. 200 (1962);
Petition of Stewart, 381 Mass. 777 (1980)

The writ may issue upon the "exhaustion of
State remedies." Binkiewicz v. Scafati, 281 F. Supp.
233 (D. Mass. 1968)

The petitioner's claims do not relate to the
indictment, trial, conviction, and sentencing stages
of the case. Bates v. Commonwealth, 431 Mass. 1019,
1020 (2001)

To obtain the relief provided in Putnam, ante,
the petitioner had filed an Affidavit In Support Of
Motion for Post-Conviction Access To Forensic and
Scientific Analysis. [Appendix Three]  The Supreme
Judicial Court relief upon this evidence in order to
reverse [Appendix One, p. 4] the Superior Court's denial
of having the Commonwealth test certain evidence.

The evidence was based on the prosecutorial
misconduct of claiming there was blood on the tunic
of the complaining witness. [Appendix Four, pp. 2-3]

The prosecutor, in his closing argument stated:

> "But certainly they were in this
> condition when she picked them up,
> secured as evidence, and taken over
> to the lab and then evaluated by
> the chemist."

[Appendix Four, p. 4]

In 2016, the lab sent its forensic report to the prosecutor, Paula Frasso. The tunic, which the lab calls a "sweater," in Lab Case No. 04-00766, was not only tested, but was returned to the District Attorney's Office. [Appendix Five, p. 7]

This case is not about the conviction. The petitioner has already served the time for the alleged rape. This is about the Brady v. Maryland, 373 U.S. 83, 87 (1963); United States v. Agurs, 427 U.S. 97, 110 (1976) violations committed by the prosecutor, pre-trial.

This was a Structural Defect in the criminal process. Arizona v. Fulminante, 499 U.S. 279, 310-311 (1991)(this violation is not subject to "harmless error" review)

As background, the petitioner wants the Court to ruminate on his previously submitted Affidavit In

Habeas                        -4-                  Putnam

Support Of Motion For New Trial, submitted on February

28, 2014, his sworn version of the facts. [Appendix

Seven, p. 8]

     The Commonwealth, in its Opposition to Defendant's

Motion For Post-Conviction Forensic Analysis, claimed

          "[T]he defendant has failed to establish
          by a preponderance of the evidence a
          sufficient chain of custody for the slacks
          and the tunic.  The victim was wearing
          gray slacks and a tunic when she was assault-
          ed by the defendant. These items were sent
          to the Massachusetts State Crime Lab on
          January 27, 2004, and were returned to the
          Harvard Police Department on February 18,
          2005. Commonwealth's Exhibit C. The gray
          slacks were entered into evidence at trial
          as Exhibit 9 and the tunic (sweater) was
          entered into evidence as Exhibit 6.  These
          items are currently stored in the Worcester
          Superior Court Clerk's Office."

     [Appendix Eight, p. 9]  (Note: the Common-

     wealth's numbering system appears snarled)

     Defense counsel filed for Discovery (Mass.R.Crim.

P. 14(a)(2), et. seq.,) on August 24, 2004.  Any location

or testing of the sweater which allegedly had blood on

it was not revealed to the defendant. [Appendix 7, p. 4]

     These facts, developed by the petitioner in the

Supreme Judicial Court, show that an evidentiary hearing
should not be barred. 28 USC §2254(e)(2)

> "...the facts underlying the claim would be
> sufficient to establish by clear and con-
> vincing evidence that but for constitutional
> error no reasonable factfinder would have
> found the applicant guilty of the underlying
> offense."

Keeney v. Tamayo-Reyes, 504 U.S. 1, 11-12
(1992); Pike v. Guarino, 492 F.3d 61, 69 (1st Cir. 2007)
(the petitioner is entitled to an evidentiary hearing
because he presented extensive evidence in the State
Court)

Because the Commonwealth never provided the re-
quested discovery, it can be considered to be "new and
substantial" evidence for evidentiary hearing purposes.
28 U.S.C. §2254(e)92)(A)(ii); Lopez v. Massachusetts,
480 F.3d 591, 594 (1st Cir. 2006)(Brady violation claim
reviewed under deferential §2254(d) standard here, calls
for the Writ to be issued)

Prosecutor Misconduct

The prosecutor's duty in a criminal prosecution is
to seek justice. Berger v. United States, 295 U.S. 78,
88 (1935)

The prosecutor should prosecute with "earnestness and vigor," but may not use "improper methods calculated to produce a wrongful conviction." The petitioner has proven by clear and convincing evidence his due process rights were violated when the prosecutor failed to notify, produce, results of testing, discovery of the tunic not having any blood on it in August 2004, said testing the purpose for sending the clothing to the State Police Crime Laboratory in the first place.

> "And Susan showed you the sweater that she had
> on that night. It was a gray sweater. And there
> were spots up on the shoulders. And she said to
> you that she thought that was blood on the sweater
> from him." [Appendix Four, p. 5](Closing Argument)

This evidence traveled through 8 lab technicians from January 27, 2004 through January 6, 2005. [Appendix Five, p. 7]

The prosecutor, one Paula Frasso, may not knowingly present false testimony and had the duty to correct any testimony that she knew to be false, Napue v. Illinois, 360 U.S. 264, 269 (1959): Mooney v. Holohan, 294 U.S. 103, 112 (1935)

The Commonwealth attorneys' misconduct drifted into the pleadings of Assistant District Attorney Donna-Marie Haran:

On April 21, 2021, the petitioner submitted Defendant's Motion For The Court To Compel The Commonwealth To Conduct Forensic Testing (based on the ruling in Commonwealth v. Putnam, 481 Mass. 1045 (2019)) [See, Appendix One, pp. 1-4], The petitioner presented State and United States caselaw for support. [Additive 4, pp. 2-21]

Rather than respond with relevant evidence, both facts and law, the ADA pulled a "fast one."

> "Wherefor, the Commonwealth does hereby move that it be permitted to respond to the defendant's motion to compel the Commonwealth to conduct forensic testing after counsel has been appointed, and has filed an amended or supplemental motion or declined to do so."

[Additive 5, p. 4]

Even ADA Haran committed fraud on the Court, Mushani v. Signal Lake Venture Fund II, LLP., 60

Mass. App. Ct. 714, 718-719 (2004): In re Gross, 435 Mass. 445, 457 (2001); United States v. Throckmorton, 98 U.S. 61, 64 (1878)(Fraud on the Court vitiates judgments)

In February 2020 the petitioner wrote to CPCS and asked for another attorney, based on his 278A attorney pedaling backwards from the Supreme Court's decision in Commonwealth v. Putnam, 481 Mass. 1045 (2019) which appears to be just "unfair."   [Appendix Nine]

However, ADA Haran was fully apprised that CPCS would not appoint an attorney for the G.L. c. 278A claim. [Appendix ten]

On June 3, 2021, the petitioner filed a Defendant's Rebuttal To The Commonwealth's  Motion of May 26, 2021, claiming that (another) delay is prejudicial to him. [Additive 7, p. 2]  The Worcester Superior Court, Reardon, J., has done nothing. [Appendix Seven, p. 19]

Now, the Commonwealth appears to be "vindictive." Blackledge v. Perry, 417 U.S. 21, 28-29 (1974) See, Shih Wei Su v. Filion, 335 F.3d 119, 127-130 (2d Cir.

2003)(prosecutor's failure to correct government wit-
ness's false testimony and the governments' subsequent
attempts to "stonewall the facts,"  is improper and
violates the Due Process Clause of the 14th Amendment
and Article XII of the Massachusetts Declaration Of
Rights)

Apparently the Commonwealth does not have the
tunic with the so-called "blood spots," tested it,
and failed to provide this exculpatory evidence, and
now seeks to avoid the comeuppance by the Supreme
Judicial Court, based on the Commonwealth's fraudulent
and deliberate violations of the Constitution(s).

## The Federal Standards

A "federal court may grant habeas relief only when
a state court's decision on the merits was 'contrary to,
or involved an unreasonable application of clearly estab-
lished Federal law, as determined by' decisions from th[e]
[Supreme Court of the United States], or was 'based on an
unreasonable determination of the facts.'" Woods v.
Donald, 575 U.S. 312, 315 (2015)[quoting] 28 USC §2254(d).

In this context, clearly established law refers to the "governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision" and must be "holdings, as opposed to dicta." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003)

A State Court's decision is "contrary to" clearly established federal law as determined by the Supreme Court if it "applies a legal rule that contradicts" the "prior holdings" of the Supreme Court" or if it reaches a different result from "a Supreme Court case" "despite confronting indistinguishable facts." Ramdass v. Angelone, 530 U.S. 156, 165 (2000)  The petitioner has shown here he is "in custody in violation of the Constitution or laws or treaties of the United States." Aspen v. Bissonnette, 480 F.3d 571, 576 (1st Cir. 2007)

Here the Court may not apply [the rules] unreasonably to the facts of this case. White v. Woodall, 572 U.S. 415, 426 (2014)

The connection from State law, G.L. c. 248 §§ 1-25, delinated by the Massachusetts Legislature, are sacrosanct.

> "[W]hoever is imprisoned or restrained
> of his liberty may, as of right and of
> course, prosecute a writ of habeas cor-
> pus, according to this chapter, to obtain
> release from such imprisonment or restraint,
> if it proves to be unlawful, unless...."

According to "First," "Second," or "Third," the petitioner may not be released through this process if he is challenging his conviction, which he is not.  He is challenging "prosecutorial misconduct," in a collateral proceeding, the remedy for which is to "obtain release."

> "[T]here is a presumption that the Legislature
> says in a statute what it means and means in a
> statute what it says."

Connecticut National Bank v. German, 503 U.S. 249 (1992)

The Supreme Judicial Court has ruled "...the language of the statute is the starting point for all questions of statutory interpretation." Hoffman v. Howmedia Inc., 373 Mass. 32, 37 (1977)

G.L. c. 248 §§1-25 is presumed to be constitutional and every rational presumption is favor of the statute's validity is made.  Pielech v. Massasoit Greyhound, Inc., 441 Mass. 188, 193 (2004)

In addition, G.L. c. 248 §1 and G.L. c. 248 §25 are two statutes which are capable of coexistence and the Supreme Judicial Court has the duty to regard each as effective. Radzanower v. Touche Ross Co., 426 U.S. 148, 155 (1976)

According to both State and Federal law, under the Due Process Clause(s) of the 14th Amendment and Article XII of the Massachusetts Declaration Of Rights, Matthews v. Eldridge, 424 U.S. 319, 335 (1976); Aime v. Commonwealth, 414 Mass. 667, 674 (1993) the statute must be implemented in a fair manner.

Under Federal law, "the prosecution" of an Opposition to seeking justice by the petitioner of an Napue v. Illinois, ante, violation on the collateral front, is just as egregious as would be a "trial error."

This is not that.  This is a Structural Defect, post-trial, which relates back to the trial.  This improper advocacy by the District Attorney's office must be punished for its lack of disclosure, where it appears the prosecutor does not have the evidence in question and is "fronting" to cover that up.

Banks v. Dretke, 540 U.S. 668, 691 (2004); Strickler v. Greene, 527 U.S. 263, 281-282 (1999) [citing] Brady, ante, for prosecutorial misconduct in providing exculpatory evidence.

Under §2254(e)(2) the petitioner has "developed the facts" by clear and convincing evidence in the State proceedings. An evidentiary hearing is proper in the Federal District Court. The Supreme Judicial Court may circumvent Federal oversight by remanding the case to the Superior Court for an evidentiary hearing, where the prosecutor, Paula Frasso, the collateral review attorney, Donna-Marie Haran, the State Police Laboratory technicians who worked on the case, the current State Police Laboratory technicians, and the petitioner may testify under oath to settle any disputes in the facts. Williams v. Taylor, 529 U.S. 420, 437 (2000) (The State's "due diligence" requires an evidentiary hearing in the manner prescribed by State law); Pike, ante, 492 F.3d at 69.

## Conclusion

For the reasons stated above, in fact and law, the Court must order the immediate release of the Peti-tioner, who has the Constitutional right to prove his

Habeas                          -14-                          Putnam


innocence under the burden of proof less than beyond

a reasonable doubt. Schlup v. Delo, 513 U.S. 298, 327

(1995); Gonzalez v. Abbott, 967 F.2d 1499, 1504 (11th

Cir. (1992)


October 14, 2021            Respectfully submitted,

                           Steven M. Putnam, Pro Se
                           Box 43,
                           Norfolk, MA 02056

Certificate of Service:
I hereby certify that I mailed a true copy of the above
Petition For Habeas Corpus to Donna-Marie Haran, ADA,
225 Main Street, Worcester, MA 01608 by first class mail
on October 14, 2021.

Exhibit B

1

NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12596

COMMONWEALTH  vs.  STEVEN M. PUTNAM.

481 Mass. 1045 (2019)

April 9, 2019.

Evidence, Scientific test, Relevancy and materiality.  Practice,
    Criminal, Postconviction relief.

In March 2006, after a jury trial, the defendant was found
guilty of home invasion, armed assault in a dwelling, rape, and
assault and battery; he was sentenced to from twenty to twenty-
five years in State prison.  The defendant here appeals from the
denial of a motion filed pursuant to G. L. c. 278A (chapter
278A) seeking postconviction forensic and scientific testing of
evidence and biological material to support a motion for a new
trial.  We decide this appeal on the basis of our opinion today
in Commonwealth v. Williams, 481 Mass.    (2019).[1]

Facts and prior proceedings.  The evidence presented at the
defendant's trial is summarized in Commonwealth v. Putnam, 75
Mass. App. Ct. 472, 473-476 (2009), the affirmance of the
defendant's convictions on direct appeal.  We provide a
condensed version of events as the jury could have found them.

On the evening of January 26, 2004, the defendant, with
whom the victim was acquainted, knocked at the victim's door,
seeking to speak with her.  After initially turning the
defendant away, the victim allowed the defendant to enter her
home, and the two spoke for a short period of time.  When the
victim attempted to make a telephone call, the defendant grabbed
the victim, punched her in the face, and threw the telephone to

---

[1] We acknowledge the amicus brief submitted by the New
England Innocence Project, the Boston College Innocence Program,
the Committee for Public Counsel Services, and Dennis Maher.

2

the floor.  After beating the victim, the defendant pulled a knife out of his pocket and stated, "You can make this hard or you can make this easy."

The defendant tore off some of the victim's clothing and digitally raped her.  When the defendant paused to pull his shirt off, the victim fled.  Naked from the waist down, the victim ran to a neighbor's house; the neighbor called the police, who arrived at the scene within minutes.

At trial, the defendant testified in his own defense that the physical contact between him and the victim was consensual and did not include penetration.  As for the knife, the defendant testified that he had tried to give it to the victim because he was afraid that he would hurt himself.

The defendant filed the instant chapter 278A motion pro se in July 2016, and he supplemented it once he was appointed counsel.  In his motion, the defendant asserted his factual innocence, claiming that he did not enter the victim's home with the intent to commit a crime (and thus was not guilty of home invasion); that he neither used force on nor caused injury to the victim (and thus was not guilty of either armed assault or assault and battery); and that he did not penetrate the victim (and thus was not guilty of rape).  Among other things, the defendant further asserted, pursuant to G. L. c. 278A, § 3 (b) (4), that the requested forensic testing of clothing collected from the victim, and the testing of the sexual assault evidence collection kit, had the potential to result in evidence material to the defendant's identification as the perpetrator.

The Commonwealth opposed the defendant's motion, arguing principally that the defendant's claim that no crime occurred was categorically barred from chapter 278A relief because it did not put identity at issue.  In denying the defendant's motion, the judge stated in part:

"The defendant's motion and affidavits do not meet the requirements of [G. L. c. 278A, § 3 (b) (4),] in that the defendant has not met his burden to show whether any test results could be material to the question of identity of the perpetrator.  Here the issue is not identity, but whether a crime occurred.  Defendant is not entitled to relief."

3

The defendant appealed, and we granted his application for direct appellate review.[2]

Discussion.  The defendant argues that the motion judge erred by interpreting G. L. c. 278A, § 3 (b) (4), to exclude movants who claim that no crime occurred.  In Williams, 481 Mass. at    , we concluded that "a defendant who asserts that the requested testing has the potential to result in evidence that is material to his or her identity as the perpetrator of the crime because no crime in fact occurred satisfies the § 3 (b) (4) requirement."  Thus, here we conclude that the defendant's motion satisfies the threshold burden of § 3 (b) (4).[3]

Nothing in our decision should be read as a comment on the defendant's likelihood of success in obtaining the testing he seeks.  We note that at the hearing stage, he still must demonstrate by a preponderance of the evidence each of the factors enumerated in G. L. c. 278A, § 7 (b), including that "the requested analysis has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case."  G. L.

---

[2] Pursuant to G. L. c. 278A (chapter 278A), an individual seeking postconviction forensic testing must present certain information by way of motion.  The Commonwealth may provide a response, but need not do so at the motion stage, which is considered "nonadversarial."  G. L. c. 278A, § 3 (e).  See Commonwealth v. Wade, 467 Mass. 496, 503 (2014), S.C., 475 Mass. 54 (2016).  If the motion is allowed, the Commonwealth at that point must file a response, and the court will hold an evidentiary hearing.  G. L. c. 278A, §§ 4 (c), 6.  Here, there is no indication in the docket that the defendant's chapter 278A motion was allowed before the Commonwealth was ordered to respond.  The Commonwealth did so citing G. L. c. 278A, § 4, the provision requiring the Commonwealth's response once the initial motion has been allowed.  A G. L. c. 278A, § 6, hearing was scheduled, but the hearing that took place was focused on whether the defendant was eligible to seek chapter 278A testing and was nonevidentiary in nature.  For these reasons, and because the motion judge who issued the ultimate denial cited G. L. c. 278A, § 3 (b) (4), we review the matter at the motion stage under § 3.

[3] The Commonwealth does not identify, nor do we discern, any defect in the defendant's prima facie case for chapter 278A relief under the other § 3 factors.

4

c. 278A, § 7 (b) (4).  More specifically, here the defendant will need to demonstrate that the analysis has the potential to result in evidence that is material to proving that no crime occurred.

Conclusion.  The order denying the defendant's chapter 278A motion is reversed, and this case is remanded to the Superior Court for further proceedings consistent with this opinion and our reasoning in Williams, supra.

So ordered.

Merritt Schnipper for the defendant.
Donna-Marie Haran, Assistant District Attorney, for the Commonwealth.
Lisa M. Kavanaugh, Committee for Public Counsel Services, Stephanie Roberts Hartung, Isaac N. Saidel-Goley, Sarah L. Rosenbluth, Sara J. van Vliet, & Sharon L. Beckman, for New England Innocence Project & others, amici curiae, submitted a brief.

Exhibit C

COMMONWEALTH OF MASSACHUSETTS

WORCESTER SS.                          SUPERIOR COURT

                                       WOCR2004-00666

Commonwealth v. Putnam,

AFFIDAVIT IN SUPPORT OF MOTION FOR NEW TRIAL

I, Steven M. Putnam, do hereby depose and state the following to be true:

1. On January 26, 2004 I was invited into the home of the Complaining Witness (name withheld).

2. At the time of the visit I sought psychiatric help from the CW as I had been drinking heavily and was having thoughts of committing suicide.

3. CW asked me to take a seat at the kitchen table.

4. CW was drinking wine and appeared to be tipsy.

5. CW asked me if I wanted to kill myself and I said I had thought about it - but no I didn't.

6. I elaborated that I felt like it sometimes.  I took my 3½" pocket knife out of my back pocket and handed it to CW but she refused to take it.

7. CW was asking me what I wanted out of life.

8. When I stated I was looking for love, CW told me that it wasn't working for me.

9. CW then allowed me to hug her but then she pushed me way saying she's not interested in me.

-2-

10. I could tell CW was a little tipsy so I kissed her on the lips.

11. CW kissed me back but when I said "let's go upstairs" she said "Let's sit on the couch."

12. We sat on the couch and I was hugging her and I helped her take off her sweatpants and panties.

13. I assumed that we were going to make love but because of the alcohol I was impotent.

14. While we were talking she again asked me if I felt suicidal.

15. All of a sudden CW ran out of the house with just her shirt and socks on.

16. I became really scared so I left CW's house and went back to my place.

17. I was under the care of Dr. Szetela at Emerson Hospital and the Harvard Police Detective called me and directed me to go to the doctor.

18. I had gone to CW's house because I needed help with my drinking habit and my suicidal thoughts.

19. I had had a drinking problem for years - I would quit - but come back to it - my life was worthless - I thought I should take my own life.

20. The night I went to CW's home I had just been fired from my Caretaker's job next door to CW's house.

21. When I went to CW's home I had a 3½" pocket knife in my back pocket of my pants.

22. At trial I told the jury that the knife they had at trial was not my knife.

23. I told the jury/prosecutor that I went to CW's home for help.

-3-

24. Up to the point where CW ran out of the door, all
    her actions were consensual.

25. When CW told me to stop getting ready to make love
    I stopped.

26. I was being treated by doctors throughout the years
    for mental impairment, including alcohol addiction,
    depression and suicidal ideations.

27. From April 16, 2004 until November 2005, I was
    represented by Robert A. Delle of 74 Elm Street in
    Worcester; who had filed a motion to withdraw on
    October 7, 2004.

28. After November 16, 2005 I was represented by Sean
    McGinty of 484 Main Street in Worcester.

29. I was not present for, nor was I notified of any
    PreTrial Conference held in the Worcester Superior
    Court for the case I was there for.

30. My attorney, Sean Mcginty, told me that because I was
    a first offender the guidelines on sentencing allowed
    for an 8-12 year sentence.  I told Mr. McGinty that
    because I was innocent, I would not plead out.

31. Prior to February 27, 2006 I had not been convicted
    of a felony crime.

32. In reading the Docket Entry sheets there were eleven
    (11) pre-trial conferences held which did not include
    me.

33. At my sentencing hearing on March 3, 2006, the CW
    gave statements to the Court contrary to her original
    statement to the police, her trial testimony, and the
    evidence presented at trial by the Commonwealth.

34. The CW witness told the Court I have a long history
    of detoxifications and she suspected me of psychologi-
    cal difficulties which were not successfully treated.

35. CW requested from the Court the maximum penalty
    allowed by law.

1    blood.  And Susan showed you the sweater that she had

2    on that night.  It was a gray sweater.  And there were

3    spots up on the shoulders.  And she said to you that

4    she thought that was blood on the sweater from him.

5            And then Susan left the house in terror.

6    She left and she went to her neighbors, who you heard

7    testify, Anne Marie and Hank Emerson, and they told

8    the nature of her mind, the state of her mind, the

9    terror that she was experiencing, that she was

10   hysterical, that she couldn't -- she was breathing

11   heavy.  She couldn't articulate.  And then the

12   officers verified that.

13           And then she told you that Steven Putnam

14   grabbed her in the kitchen and that he assaulted her.

15   He punched her in the head.  He pulled her hair.  He

16   bit her.

17           And how do we know that happened?  Well,

18   first, we have the medical records.  And in the

19   medical records, you have the nurse's notes of what

20   she saw.

21           And she says that she saw abrasions and

22   contusions.  And to you and me, those are scrapes and

23   bruises.  That's what she saw.  That's what the

24   officers testified that they saw, abrasions on her

2-170

1    Now, the evidence that you've seen just

2    doesn't support that. First of all, here are the

3    pants that were recovered from the scene.

4        Now, Trooper Fisher told you she went into

5    the home and she took photographs and she saw clothing

6    on the floor, which she couldn't really describe to

7    you. She just generally remembered colors of

8    clothing.

9        And she collected those items and put them

10    into evidence bags. She didn't analyze them. She

11    didn't do anything else with them. She just held them

12    and transferred them.

13        And I would suggest that when she picked

14    these up from the floor, she may not have seen they

15    were ripped. But certainly they were in this

16    condition when she picked them up, secured as

17    evidence, and taken over to the lab and then evaluated

18    by the chemist.

19        She told you that she looked at these pants

20    and she determined how the tearing was -- how it

21    happened, that it wasn't the way it would happen when

22    you sit down and your pants tear. It was a violent

23    ripping.

24        And then recall she said that there was

Appendix Four p. 2

1-191

1               MS. FRASSO: Thank you, your Honor.

2               THE COURT: Hold on.

3   Q.   What is that?

4   A.   That's --

5               THE COURT: Hold on one second.

6                      (Photograph, marked for

7                        identification as

8                        Exhibit B.)

9               MS. FRASSO: Excuse me.

10          (Ms. Frasso and the court reporter confer.)

11              THE COURT: You asked it be marked --

12              MS. FRASSO: Did I ask for identification?

13              THE COURT: -- for identification.

14              MS. FRASSO: Could it be marked as an

15   exhibit?

16              THE COURT: Any objection?

17              MR. McGINTY: No, your Honor.

18              THE COURT: Next exhibit.

19                     (Photograph previously

20                      marked as Exhibit B,

21                      marked and admitted into

22                      evidence as Exhibit 5.)

23   Q.   (by Ms. Frasso)  What is that before you?

24   A.   A tunic.

1   Q.  Do you recognize that?

2   A.  Yes.

3   Q.  When was the last time you saw that?

4   A.  The night I was assaulted.

5   Q.  And do you notice anything on the upper left-hand side

6      there?  Maybe the right-hand side.

7   A.  There's a little blood there and there's blood on the

8      right-hand side.

9   Q.  Were you bleeding that night?

10   A.  Not to my knowledge, right then.

11   Q.  And is that the area where the defendant grabbed you?

12   A.  Yes.

13          MS. FRASSO:  Your Honor, I'd request to have

14      this marked as an exhibit.

15          THE COURT:  Being no objection --

16          MR. McGINTY:  That's fine, your Honor.

17          THE COURT:  -- it may be marked.  Did that

18      come in a bag by itself?

19          MS. FRASSO:  Yes, it did.

20          THE COURT:  Let's put it back in the bag and

21      mark the bag.

22              (White paper bag

23               containing sweater,

24               marked and admitted into

1  Q.  So what happened then?

2  A.  He kept trying to push me up the stairs and I didn't

3      go, and he -- there's a couch right there and he threw

4      me down on the couch. And then he ripped off my

5      clothing.

6  Q.  Okay. So when he threw you down on the couch -- if

7      you could just hold on just for a minute.

8              I show you a photograph. Is that a fair and

9      accurate representation of what it appears to be?

10 A.  Yes.

11 Q.  What is it?

12 A.  It's the couch by the stairs in my living room.

13 Q.  And is that the couch?

14 A.  Yes.

15 Q.  What happened then? After he threw you on the couch,

16     what happened next?

17 A.  Then he ripped off my clothing on the bottom of my

18     body.

19 Q.  What were you wearing?

20 A.  I was wearing slacks and a tunic and underwear and

21     slippers and socks.

22              MS. FRASSO: Your Honor, could this be

23     marked for identification?

24              THE COURT: Yes.

COMMONWEALTH OF MASSACHUSETTS

WORCESTER SS.                          SUPERIOR COURT

                                      0485cr00666

Commonwealth v. Putnam,

### AFFIDAVIT IN SUPPORT OF MOTION FOR POST-CONVICTION ACCESS TO FORENSIC AND SCIENTIFIC ANALYSIS

I, Steven M. Putnam, do hereby depose and state the following to be true:

1.  I am the defendant in the above-captioned criminal matter and make this affidavit to support my motion for post-conviction access to forensic and scientific analysis.

2.  When I appeared for arraignment I was asked how I pleaded to the charges, which I told the Court "Not Guilty."

3.  The reason I pleaded not guilty is because I am factually innocent of committing any crime against the complaining witness.

4.  The evidence used to convict me, other than the complaining witness's testimony that the sexual events between us were not consensual is delineated in the Appendices 1-15, which for the most part went untested by the Commonwealth, and my attorney also passed on the testing.

5.  I have been trying to prove my innocence for more than a decade, to no avail, but I believe that forensic and scientific analysis will exonerate me.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS TWENTY-SECOND DAY OF JULY, TWO THOUSAND AND SIXTEEN,

/s/ _____

        Steven M. Putnam, Pro Se
        Box 43, Norfolk, MA 02056

Exhibit E



CHARLES D. BAKER
*GOVERNOR*

KARYN E. POLITO
*LIEUTENANT GOVERNOR*

DANIEL BENNETT
*SECRETARY*

COLONEL RICHARD D. McKEON
*SUPERINTENDENT*

*The Commonwealth of Massachusetts*

*Department of State Police*

*Crime Laboratory*

*124 Acton Street,*

*Maynard, MA 01754*

*Telephone: (978) 451-3300 Facsimile: (978) 451-3320*

## Chain of Custody Report

**Lab Case Number**   04-00766
**Location:**   Harvard
**Department Name:**   Harvard Police Department
**Dept. Case Number**   79912

---

1-1   BOX1: Knife - -

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 01/27/2004 | 13:17 | LIMS User | Christine M. Fisher |
| 01/27/2004 | 13:38 | CSSS - Devens (304) | CSSS Lab Area |
| 03/18/2004 | 9:02 | Evidence Transfer | To Crime Laboratory - Sudbury |
| 03/18/2004 | 14:09 | Sudbury Evidence Control Unit | C3-B |
| 12/23/2004 | 19:30 | Cold Storage "B" | CSB A9 |
| 12/23/2004 | 19:30 | Cold Storage "B" | CSB A9 |
| 11/15/2005 | 11:42 | LIMS User | Sherri J. Menendez |
| 11/15/2005 | 12:13 | North Sudbury Facility | Criminalistics Incoming Cold Room |
| 11/16/2005 | 8:47 | Criminalistics Section | CRIM - Deanna R. Dygan's Work Area |
| 11/16/2005 | 13:57 | Done Area - North Sudbury | Criminalistics Done Area |
| 11/17/2005 | 17:57 | Sudbury Evidence Control Unit | C1-C |
| 11/21/2005 | 11:12 | Evidence Disposition | Returned to Submitting Agency |
| 11/21/2005 | 15:22 | CSSS - Devens (304) | Christine Fisher's Work Area |
| 11/28/2005 | 14:11 | CSSS - Devens (304) | 304-Evidence Room Done |
| 02/24/2006 | 9:09 | LIMS User | Christine M. Fisher |
| 03/01/2006 | 10:28 | Evidence Disposition | Returned to Submitting Agency |

Submitted as evidence at court testimony to ADA Paula Frasso, Worcester Superior Court

---

1-1.1   HSP: Knife - Swab (1) from handle for "handler" DNA, Qlim -

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 11/16/2005 | 10:33 | LIMS User | Deanna R. Dygan |
| 11/16/2005 | 10:34 | LIMS User | Deanna R. Dygan |
| 11/16/2005 | 13:57 | Done Area - North Sudbury | Criminalistics Done Area |
| 11/18/2005 | 16:14 | LIMS User | Taylor C. Kopec |
| 11/18/2005 | 17:41 | Cold Storage "B" | Long Term Storage |
| 03/10/2009 | 9:45 | Cold Storage "B" | Long Term Storage - Cuttings |
| 12/20/2012 | 8:30 | Cold Storage "B" | 2004 Cuttings - Long Term Storage |

Comm. Exhibit C

Appendix Five

**1-1.2          HSP: Knife - Swab (1) from blade for "handler" DNA, Qlim -**

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 11/16/2005 | 10:33 | LIMS User | Deanna R. Dygan |
| 11/16/2005 | 10:34 | LIMS User | Deanna R. Dygan |
| 11/16/2005 | 13:57 | Done Area - North Sudbury | Criminalistics Done Area |
| 11/18/2005 | 16:14 | LIMS User | Taylor C. Kopec |
| 11/18/2005 | 17:41 | Cold Storage "B" | Long Term Storage |
| 03/10/2009 | 9:45 | Cold Storage "B" | Long Term Storage - Cuttings |
| 12/20/2012 | 8:30 | Cold Storage "B" | 2004 Cuttings - Long Term Storage |

**1-2          PENV: Latent Lifter - - -**

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 01/27/2004 | 13:18 | LIMS User | Christine M. Fisher |
| 01/27/2004 | 13:36 | CSSS - Devens (304) | CSSS Case File Envelope |
| 11/28/2005 | 14:13 | CSSS - Devens (304) | 304-Evidence Room Done |
| 01/16/2008 | 10:35 | Evidence Disposition | Returned to Submitting Agency |

**1-3          PENV: Latent Lifter - - palm -**

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 01/27/2004 | 13:18 | LIMS User | Christine M. Fisher |
| 01/27/2004 | 13:36 | CSSS - Devens (304) | CSSS Case File Envelope |
| 11/28/2005 | 14:13 | CSSS - Devens (304) | 304-Evidence Room Done |
| 01/16/2008 | 10:35 | Evidence Disposition | Returned to Submitting Agency |

**1-4          PENV: Compact Disk - - master copy -**

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 01/27/2004 | 13:19 | LIMS User | Christine M. Fisher |
| 01/27/2004 | 13:36 | CSSS - Devens (304) | CSSS Case File Envelope |

**1-5          PENV: Compact Disk - - working copy -**

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 01/27/2004 | 13:20 | LIMS User | Christine M. Fisher |
| 01/27/2004 | 13:36 | CSSS - Devens (304) | CSSS Case File Envelope |

**1-5.1          ITMTAG: Photo Contact / Index Sheet - - -**

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 01/27/2004 | 13:20 | LIMS User | Christine M. Fisher |
| 01/27/2004 | 13:36 | CSSS - Devens (304) | CSSS Case File Envelope |

**1-5.2          PENV: Compact Disk - - ADA Frasso copy -**

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 02/24/2006 | 9:06 | LIMS User | Christine M. Fisher |
| 02/24/2006 | 9:08 | Evidence Disposition | Returned to Submitting Agency |

ADA Paula Frasso

3

### 1-5.3        PENV: Photo Contact / Index Sheet - - ADA Frasso copy -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 02/24/2006  9:07 | LIMS User | Christine M. Fisher |
| 02/24/2006  9:08 | Evidence Disposition | Returned to Submitting Agency |
| ADA Paula Frasso | | |

### 1-6        PENV: Photo Negative(s) - - FP photos -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/27/2004  13:25 | LIMS User | Christine M. Fisher |
| 01/27/2004  13:36 | CSSS - Devens (304) | CSSS Case File Envelope |

### 1-7        PENV: Compact Disk - - Harvard PD copy -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/30/2004  10:04 | CSSS - Devens (304) | CSSS Case File Envelope |
| 01/30/2004  10:07 | LIMS User | Christine M. Fisher |
| 01/30/2004  10:31 | Evidence Disposition | Released to Authorized Requestee |

### 1-7.1        ITMTAG: Photo Contact / Index Sheet - - Harvard PD copy -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/30/2004  10:04 | LIMS User | Christine M. Fisher |
| 01/30/2004  10:31 | Evidence Disposition | Released to Authorized Requestee |

### 1-8        PENV: Photo Negative(s) - - FP @ victim's home -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 02/04/2004  14:19 | LIMS User | Christine M. Fisher |
| 02/04/2004  14:25 | CSSS - Devens (304) | CSSS Case File Envelope |

### 1-8.1        PENV: Compact Disk - - FP @ victim's home -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 02/04/2004  14:20 | LIMS User | Christine M. Fisher |
| 02/04/2004  14:25 | CSSS - Devens (304) | CSSS Case File Envelope |

### 1-8.2        ITMTAG: Photo Contact / Index Sheet - - FP @ victim's home -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 02/04/2004  14:21 | LIMS User | Christine M. Fisher |
| 02/04/2004  14:25 | CSSS - Devens (304) | CSSS Case File Envelope |

**2-1**  · · · · · · KIT: Sexual Assault Evidence Collection Kit - -

4

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/27/2004  14:09 | LIMS User | Christian V. Roy |
| 01/27/2004  14:11 | Sudbury Evidence Control Unit | Serology Shelf |
| 02/03/2004  10:15 | Criminalistics Section | CRIM - Erica Blais's Work Area |
| 02/03/2004  13:14 | Sudbury Evidence Control Unit | Serology Shelf |
| 02/26/2004  10:52 | Criminalistics Section | CRIM - Tom Sendlenski's Work Area |
| 03/03/2004  9:07 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 04/28/2004  8:53 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 10/14/2004  15:02 | Sudbury Evidence Control Unit | Serology Shelf |
| 08/08/2005  18:05 | LIMS User | Diana L. Howery |
| 08/08/2005  18:08 | North Sudbury Facility | Criminalistics Incoming Cold Room |
| 01/25/2006  16:38 | Done Area - North Sudbury | Criminalistics Done Area |
| 01/27/2006  7:19 | LIMS User | Taylor C. Kopec |
| 01/27/2006  8:22 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 02/21/2006  15:15 | Evidence Disposition | Returned to Submitting Agency |

**2-1-01**      ITEM: Sexual Assault Examination Form(s) - -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 02/03/2004  10:34 | Criminalistics Section | CRIM - Erica Blais's Work Area |
| 02/03/2004  13:14 | Sudbury Evidence Control Unit | Serology Shelf |
| 02/26/2004  10:52 | Criminalistics Section | CRIM - Tom Sendlenski's Work Area |
| 03/03/2004  9:07 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 04/28/2004  8:53 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 10/14/2004  15:02 | Sudbury Evidence Control Unit | Serology Shelf |
| 08/08/2005  18:05 | LIMS User | Diana L. Howery |
| 08/08/2005  18:08 | North Sudbury Facility | Criminalistics Incoming Cold Room |
| 01/25/2006  16:38 | Done Area - North Sudbury | Criminalistics Done Area |
| 01/27/2006  7:19 | LIMS User | Taylor C. Kopec |
| 01/27/2006  8:22 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 02/21/2006  15:15 | Evidence Disposition | Returned to Submitting Agency |

**2-1-02**      HSP: Known Blood Standard - (V) (      ι-

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 02/03/2004  10:34 | Criminalistics Section | CRIM - Erica Blais's Work Area |
| 02/03/2004  10:34 | LIMS User | Erica L. Blais |
| 02/03/2004  13:14 | Sudbury Evidence Control Unit | Evidence Room Refrigerator 1 |
| 11/24/2004  19:35 | Evidence Disposition | Destroyed |

**2-1-02.1**      MYLAR: Known Blood Standard - (V)      ι-

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 02/03/2004  10:35 | LIMS User | Erica L. Blais |
| 02/03/2004  19:39 | Sudbury Evidence Control Unit | Evidence Room Freezer 4 |
| 12/30/2004  17:23 | Sudbury Evidence Control Unit | Evidence Room Freezer 3 |
| 07/12/2005  8:21 | Criminalistics Section | CRIM - Lynne Sarty's Work Area |
| 07/12/2005  9:36 | Sudbury Evidence Control Unit | Evidence Room Freezer 3 |
| 07/22/2005  14:01 | Cold Storage "B" | Long Term Storage |
| Transferred to make space in Freezer 3. JKC/TCK 07/22/05. | | |
| 11/06/2008  12:43 | Cold Storage "B" | Long Term Storage - Known Standards |
| 06/21/2012  9:53 | Cold Storage "B" | 2004 Known Standards - Long Term Storage |

5

### 2-1-02.1.1   HSP: Known Blood Standard - (V) (

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 07/12/2005  8:52 | LIMS User | Lynne Sarty |
| 07/12/2005  8:53 | LIMS User | Lynne Sarty |
| 07/13/2005  8:06 | Evidence Disposition | Mailed to Cellmark Diagnostics |
| 04/10/2007  14:05 | Sudbury Evidence Control Unit | Evidence Room Freezer 5 |
| Returned from Orchid Cellmark DLH 11-07-07 | | |
| 11/07/2007  16:29 | LIMS User | Diana L. Howery |
| 11/07/2007  16:30 | Sudbury Evidence Control Unit | C1-B |
| 11/09/2007  13:03 | Cold Storage "B" | Long Term Storage |
| 03/10/2009  9:45 | Cold Storage "B" | Long Term Storage - Cuttings |
| 12/20/2012  8:30 | Cold Storage "B" | 2004 Cuttings - Long Term Storage |

### 2-1-03   ITEM: Saliva Sample - -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 02/03/2004  10:34 | Criminalistics Section | CRIM - Erica Blais's Work Area |
| 02/03/2004  13:14 | Sudbury Evidence Control Unit | Serology Shelf |
| 02/26/2004  10:52 | Criminalistics Section | CRIM - Tom Sendlenski's Work Area |
| 03/03/2004  9:07 | Done Room - Sudbury (ECU) | DONE ROOM KIT SHELF |
| 04/28/2004  8:53 | Done Room - Sudbury (ECU) | DONE ROOM KIT SHELF |
| 10/14/2004  15:02 | Sudbury Evidence Control Unit | Serology Shelf |
| 08/08/2005  18:05 | LIMS User | Diana L. Howery |
| 08/08/2005  18:08 | North Sudbury Facility | Criminalistics Incoming Cold Room |
| 01/25/2006  16:38 | Done Area - North Sudbury | Criminalistics Done Area |
| 01/27/2006  7:19 | LIMS User | Taylor C. Kopec |
| 01/27/2006  8:22 | Done Room - Sudbury (ECU) | DONE ROOM KIT SHELF |
| 02/21/2006  15:15 | Evidence Disposition | Returned to Submitting Agency |

### 2-1-04   ITEM: External Genital Swab(s) - -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 03/03/2004  8:10 | Criminalistics Section | CRIM - Tom Sendlenski's Work Area |
| 03/03/2004  9:07 | Done Room - Sudbury (ECU) | DONE ROOM KIT SHELF |
| 04/28/2004  8:53 | Done Room - Sudbury (ECU) | DONE ROOM KIT SHELF |
| 10/14/2004  15:02 | Sudbury Evidence Control Unit | Serology Shelf |
| 08/08/2005  18:05 | LIMS User | Diana L. Howery |
| 08/08/2005  18:08 | North Sudbury Facility | Criminalistics Incoming Cold Room |
| 01/25/2006  16:38 | Done Area - North Sudbury | Criminalistics Done Area |
| 01/27/2006  7:19 | LIMS User | Taylor C. Kopec |
| 01/27/2006  8:22 | Done Room - Sudbury (ECU) | DONE ROOM KIT SHELF |
| 02/21/2006  15:15 | Evidence Disposition | Returned to Submitting Agency |

### 2-1-05   HSP: Bite Mark(s) Swab(s) - 2 swabs, amyl+ -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 03/03/2004  8:10 | Criminalistics Section | CRIM - Tom Sendlenski's Work Area |
| 03/03/2004  8:59 | LIMS User | Thomas P. Sendlenski |
| 03/03/2004  9:07 | Sudbury Evidence Control Unit | Evidence Room Freezer 3 |
| 03/28/2005  15:25 | Criminalistics Section | CRIM - Jennifer Preisig's Work Area |
| 03/30/2005  13:41 | Sudbury Evidence Control Unit | Evidence Room Freezer 3 |
| 07/04/2005  14:34 | Cold Storage "B" | Long Term Storage |
| 07/12/2005  8:21 | Criminalistics Section | CRIM - Lynne Sarty's Work Area |

6

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 07/12/2005 | 9:33 | LIMS User | Lynne Sarty |
| 07/13/2005 | 8:06 | Evidence Disposition | Mailed to Cellmark Diagnostics |
| 04/10/2007 | 14:05 | Sudbury Evidence Control Unit | Evidence Room Freezer 5 |
| Returned from Orchid Cellmark | | | |
| DLH 11-07-07 | | | |
| 11/07/2007 | 16:29 | LIMS User | Diana L. Howery |
| 11/07/2007 | 16:30 | Sudbury Evidence Control Unit | C1-B |
| 11/09/2007 | 13:03 | Cold Storage "B" | Long Term Storage |
| 03/10/2009 | 9:45 | Cold Storage "B" | Long Term Storage - Cuttings |
| 12/20/2012 | 8:30 | Cold Storage "B" | 2004 Cuttings - Long Term Storage |

## 2-1-06        ITEM: Control Swab(s) - 2 swabs -

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 03/03/2004 | 8:10 | Criminalistics Section | CRIM - Tom Sendlenski's Work Area |
| 03/03/2004 | 8:59 | LIMS User | Thomas P. Sendlenski |
| 03/03/2004 | 9:07 | Sudbury Evidence Control Unit | Evidence Room Freezer 3 |
| 03/28/2005 | 15:25 | Criminalistics Section | CRIM - Jennifer Preisig's Work Area |
| 03/30/2005 | 13:41 | Sudbury Evidence Control Unit | Evidence Room Freezer 3 |
| 07/04/2005 | 14:34 | Cold Storage "B" | Long Term Storage |
| 07/12/2005 | 8:21 | Criminalistics Section | CRIM - Lynne Sarty's Work Area |
| 07/12/2005 | 9:36 | Cold Storage "B" | Long Term Storage |
| 03/10/2009 | 9:45 | Cold Storage "B" | Long Term Storage - Cuttings |
| 12/20/2012 | 8:30 | Cold Storage "B" | 2004 Cuttings - Long Term Storage |

## 2-1-07        ITEM: Head Hair Standard - -

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 03/03/2004 | 8:10 | Criminalistics Section | CRIM - Tom Sendlenski's Work Area |
| 03/03/2004 | 9:07 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 04/28/2004 | 8:53 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 10/14/2004 | 15:02 | Sudbury Evidence Control Unit | Serology Shelf |
| 08/08/2005 | 18:05 | LIMS User | Diana L. Howery |
| 08/08/2005 | 18:08 | North Sudbury Facility | Criminalistics Incoming Cold Room |
| 01/25/2006 | 16:38 | Done Area - North Sudbury | Criminalistics Done Area |
| 01/27/2006 | 7:19 | LIMS User | Taylor C. Kopec |
| 01/27/2006 | 8:22 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 02/21/2006 | 15:15 | Evidence Disposition | Returned to Submitting Agency |

## 2-1-08        ITEM: Head Hair Combings - -

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 03/03/2004 | 8:10 | Criminalistics Section | CRIM - Tom Sendlenski's Work Area |
| 03/03/2004 | 9:07 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 04/28/2004 | 8:53 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 10/14/2004 | 15:02 | Sudbury Evidence Control Unit | Serology Shelf |
| 08/08/2005 | 18:05 | LIMS User | Diana L. Howery |
| 08/08/2005 | 18:08 | North Sudbury Facility | Criminalistics Incoming Cold Room |
| 01/25/2006 | 16:38 | Done Area - North Sudbury | Criminalistics Done Area |
| 01/27/2006 | 7:19 | LIMS User | Taylor C. Kopec |
| 01/27/2006 | 8:22 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 02/21/2006 | 15:15 | Evidence Disposition | Returned to Submitting Agency |

7

**2-1-09**     ITEM: Pubic Hair Standard - -

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 03/03/2004 | 8:10 | Criminalistics Section | CRIM - Tom Sendlenski's Work Area |
| 03/03/2004 | 9:07 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 04/28/2004 | 8:53 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 10/14/2004 | 15:02 | Sudbury Evidence Control Unit | Serology Shelf |
| 08/08/2005 | 18:05 | LIMS User | Diana L. Howery |
| 08/08/2005 | 18:08 | North Sudbury Facility | Criminalistics Incoming Cold Room |
| 01/25/2006 | 16:38 | Done Area - North Sudbury | Criminalistics Done Area |
| 01/27/2006 | 7:19 | LIMS User | Taylor C. Kopec |
| 01/27/2006 | 8:22 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 02/21/2006 | 15:15 | Evidence Disposition | Returned to Submitting Agency |

**2-1-10**     ITEM: Pubic Hair Combings - -

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 03/03/2004 | 8:10 | Criminalistics Section | CRIM - Tom Sendlenski's Work Area |
| 03/03/2004 | 9:07 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 04/28/2004 | 8:53 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 10/14/2004 | 15:02 | Sudbury Evidence Control Unit | Serology Shelf |
| 08/08/2005 | 18:05 | LIMS User | Diana L. Howery |
| 08/08/2005 | 18:08 | North Sudbury Facility | Criminalistics Incoming Cold Room |
| 01/25/2006 | 16:38 | Done Area - North Sudbury | Criminalistics Done Area |
| 01/27/2006 | 7:19 | LIMS User | Taylor C. Kopec |
| 01/27/2006 | 8:22 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 02/21/2006 | 15:15 | Evidence Disposition | Returned to Submitting Agency |

**2-1-11**     ITEM: Photograph(s) - - Victim Photograph from kit -

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 03/03/2004 | 8:10 | Criminalistics Section | CRIM - Tom Sendlenski's Work Area |
| 03/03/2004 | 9:07 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 04/28/2004 | 8:53 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 10/14/2004 | 15:02 | Sudbury Evidence Control Unit | Serology Shelf |
| 08/08/2005 | 18:05 | LIMS User | Diana L. Howery |
| 08/08/2005 | 18:08 | North Sudbury Facility | Criminalistics Incoming Cold Room |
| 01/25/2006 | 16:38 | Done Area - North Sudbury | Criminalistics Done Area |
| 01/27/2006 | 7:19 | LIMS User | Taylor C. Kopec |
| 01/27/2006 | 8:22 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
| 02/21/2006 | 15:15 | Evidence Disposition | Returned to Submitting Agency |

**2-2**     BOX: Sweater -

| Date / Time | | Custody Of | Location / Person |
|---|---|---|---|
| 01/27/2004 | 14:09 | LIMS User | Christian V. Roy |
| 01/27/2004 | 14:11 | Sudbury Evidence Control Unit | C7-C |
| 03/03/2004 | 9:08 | Done Room -Sudbury (ECU) | D6B |
| 03/05/2004 | 14:00 | Done Room -Sudbury (ECU) | D6B |
| 05/07/2004 | 8:45 | Done Room -Sudbury (ECU) | D6B |
| 10/14/2004 | 15:02 | Sudbury Evidence Control Unit | C119 |
| 12/29/2004 | 16:37 | Criminalistics Section | CRIM - Deanna R. Dygan's Work Area |
| 01/06/2005 | 13:16 | Done Room -Sudbury (ECU) | D7D |
| 02/18/2005 | 11:24 | Evidence Disposition | Returned to Submitting Agency |

**2-3**          BOX: Slacks - gray -

( 8 )

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/27/2004  14:10 | LIMS User | Christian V. Roy |
| 01/27/2004  14:11 | Sudbury Evidence Control Unit | C7-C |
| 03/03/2004  9:08 | Done Room -Sudbury (ECU) | D6E |
| 03/05/2004  14:00 | Done Room -Sudbury (ECU) | D6B |
| 05/07/2004  8:45 | Done Room -Sudbury (ECU) | D6B |
| 10/14/2004  15:02 | Sudbury Evidence Control Unit | C119 |
| 12/29/2004  16:37 | Criminalistics Section | CRIM - Deanna R. Dygan's Work Area |
| 01/06/2005  13:16 | Done Room -Sudbury (ECU) | D7D |
| 02/18/2005  11:24 | Evidence Disposition | Returned to Submitting Agency |

**2-4**          BOX: Shirt - (

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/27/2004  14:10 | LIMS User | Christian V. Roy |
| 01/27/2004  14:11 | Sudbury Evidence Control Unit | C7-C |
| 03/03/2004  9:08 | Done Room -Sudbury (ECU) | D6E |
| 03/05/2004  14:00 | Done Room -Sudbury (ECU) | D6B |
| 05/07/2004  8:45 | Done Room -Sudbury (ECU) | D6B |
| 10/14/2004  15:02 | Sudbury Evidence Control Unit | C119 |
| 12/29/2004  16:37 | Criminalistics Section | CRIM - Deanna R. Dygan's Work Area |
| 01/06/2005  13:16 | Done Room -Sudbury (ECU) | D7D |
| 02/18/2005  11:24 | Evidence Disposition | Returned to Submitting Agency |

**2-5**          BOX: Underpants -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/27/2004  14:10 | LIMS User | Christian V. Roy |
| 01/27/2004  14:11 | Sudbury Evidence Control Unit | C7-C |
| 03/03/2004  9:08 | Done Room -Sudbury (ECU) | D6E |
| 03/05/2004  14:00 | Done Room -Sudbury (ECU) | D6B |
| 05/07/2004  8:45 | Done Room -Sudbury (ECU) | D6B |
| 10/14/2004  15:02 | Sudbury Evidence Control Unit | C119 |
| 12/29/2004  16:37 | Criminalistics Section | CRIM - Deanna R. Dygan's Work Area |
| 01/06/2005  13:16 | Done Room -Sudbury (ECU) | D7D |
| 02/18/2005  11:24 | Evidence Disposition | Returned to Submitting Agency |

**2-6**          BOX: Slipper (footwear) - one pair -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/27/2004  14:10 | LIMS User | Christian V. Roy |
| 01/27/2004  14:11 | Sudbury Evidence Control Unit | C7-C |
| 03/03/2004  9:08 | Done Room -Sudbury (ECU) | D6E |
| 03/05/2004  14:00 | Done Room -Sudbury (ECU) | D6B |
| 05/07/2004  8:45 | Done Room -Sudbury (ECU) | D6B |
| 10/14/2004  15:02 | Sudbury Evidence Control Unit | C119 |
| 12/29/2004  16:37 | Criminalistics Section | CRIM - Deanna R. Dygan's Work Area |
| 01/06/2005  13:16 | Done Room -Sudbury (ECU) | D7D |
| 02/18/2005  11:24 | Evidence Disposition | Returned to Submitting Agency |

9

**2-7**          BOX: Sweatpants -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/27/2004 14:10 | LIMS User | Christian V. Roy |
| 01/27/2004 14:11 | Sudbury Evidence Control Unit | C7-C |
| 03/03/2004 9:08 | Done Room -Sudbury (ECU) | D6E |
| 03/05/2004 14:00 | Done Room -Sudbury (ECU) | D6B |
| 05/07/2004 8:45 | Done Room -Sudbury (ECU) | D6B |
| 10/14/2004 15:02 | Sudbury Evidence Control Unit | C119 |
| 12/29/2004 16:37 | Criminalistics Section | CRIM - Deanna R. Dygan's Work Area |
| 01/06/2005 13:16 | Done Room -Sudbury (ECU) | D7D |
| 02/18/2005 11:24 | Evidence Disposition | Returned to Submitting Agency |

**2-8**          BOX: Jacket – fleece pullover - 

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/27/2004 14:11 | LIMS User | Christian V. Roy |
| 01/27/2004 14:11 | Sudbury Evidence Control Unit | C7-C |
| 03/03/2004 9:08 | Done Room -Sudbury (ECU) | D6E |
| 03/05/2004 14:00 | Done Room -Sudbury (ECU) | D6B |
| 05/07/2004 8:45 | Done Room -Sudbury (ECU) | D6B |
| 10/14/2004 15:02 | Sudbury Evidence Control Unit | C119 |
| 12/29/2004 16:37 | Criminalistics Section | CRIM - Deanna R. Dygan's Work Area |
| 01/06/2005 13:16 | Done Room -Sudbury (ECU) | D7D |
| 02/18/2005 11:24 | Evidence Disposition | Returned to Submitting Agency |

**2-9**          BOX: Sock(s) - 

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/27/2004 14:11 | LIMS User | Christian V. Roy |
| 01/27/2004 14:11 | Sudbury Evidence Control Unit | C7-C |
| 03/03/2004 9:08 | Done Room -Sudbury (ECU) | D6E |
| 03/05/2004 14:00 | Done Room -Sudbury (ECU) | D6B |
| 05/07/2004 8:45 | Done Room -Sudbury (ECU) | D6B |
| 10/14/2004 15:02 | Sudbury Evidence Control Unit | C119 |
| 12/29/2004 16:37 | Criminalistics Section | CRIM - Deanna R. Dygan's Work Area |
| 01/06/2005 13:16 | Done Room -Sudbury (ECU) | D7D |
| 02/18/2005 11:24 | Evidence Disposition | Returned to Submitting Agency |

**2-10**          HSP: Extract Tube of Item - Returned from Orchid Cellmark
                    DLH 12-11-07 -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/27/2004 14:01 | LIMS User | Diana L. Howery |
| 07/06/2007 14:10 | Sudbury Evidence Control Unit | Evidence Room Freezer 5 |
| Returned from Orchid Cellmark DLH 12-11-07 | | |
| 12/11/2007 16:02 | LIMS User | Diana L. Howery |
| 12/11/2007 16:02 | Sudbury Evidence Control Unit | C1-B |
| 12/12/2007 16:53 | Cold Storage "B" | Long Term Storage |
| 03/10/2009 9:45 | Cold Storage "B" | Long Term Storage - Cuttings |
| 12/20/2012 8:30 | Cold Storage "B" | 2004 Cuttings - Long Term Storage |

**3-1**        BOX: Boxer shorts – Steven Putnam –

**10**

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/29/2004  15:27 | LIMS User | Bruce W. Cranstoun |
| 01/29/2004  15:29 | Sudbury Evidence Control Unit | C12 |
| 08/20/2004  15:04 | Done Room -Sudbury (ECU) | D4B |
| 10/14/2004  15:02 | Sudbury Evidence Control Unit | C119 |
| 02/21/2005  14:52 | Cold Storage "B" | CSB H50 |
| 05/30/2005  13:41 | Cold Storage "B" | CSB H48 |
| Evidence moved to make room for bigger boxes that were located in CSA. TCK/JKC 5/30/05 | | |
| 06/29/2005  15:58 | Cold Storage "B" | CSB A28 |
| Evidence was moved to different shelves to make room for incoming cases and organize CSB. TCk 6/29/05 | | |
| 02/21/2006  15:15 | Evidence Disposition | Returned to Submitting Agency |

**3-2**        BOX: Jacket – Steven Putnam –

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/29/2004  15:28 | LIMS User | Bruce W. Cranstoun |
| 01/29/2004  15:29 | Sudbury Evidence Control Unit | C12 |
| 08/20/2004  15:04 | Done Room -Sudbury (ECU) | D4E |
| 10/14/2004  15:02 | Sudbury Evidence Control Unit | C119 |
| 02/21/2005  14:52 | Cold Storage "B" | CSB H50 |
| 05/30/2005  13:41 | Cold Storage "B" | CSB H48 |
| Evidence moved to make room for bigger boxes that were located in CSA. TCK/JKC 5/30/05 | | |
| 06/29/2005  15:58 | Cold Storage "B" | CSB A28 |
| Evidence was moved to different shelves to make room for incoming cases and organize CSB. TCk 6/29/05 | | |
| 02/21/2006  15:15 | Evidence Disposition | Returned to Submitting Agency |

**3-3**        BOX: Jeans – Steven Putnam –

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/29/2004  15:28 | LIMS User | Bruce W. Cranstoun |
| 01/29/2004  15:29 | Sudbury Evidence Control Unit | C12 |
| 08/20/2004  15:04 | Done Room -Sudbury (ECU) | D4B |
| 10/14/2004  15:02 | Sudbury Evidence Control Unit | C119 |
| 02/21/2005  14:52 | Cold Storage "B" | CSB H50 |
| 05/30/2005  13:41 | Cold Storage "B" | CSB H48 |
| Evidence moved to make room for bigger boxes that were located in CSA. TCK/JKC 5/30/05 | | |
| 06/29/2005  15:58 | Cold Storage "B" | CSB A28 |
| Evidence was moved to different shelves to make room for incoming cases and organize CSB. TCk 6/29/05 | | |
| 02/21/2006  15:15 | Evidence Disposition | Returned to Submitting Agency |

**3-4**        BOX: Shirt – Steven Putnam –

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/29/2004  15:29 | LIMS User | Bruce W. Cranstoun |
| 01/29/2004  15:29 | Sudbury Evidence Control Unit | C12 |
| 08/20/2004  15:04 | Done Room -Sudbury (ECU) | D4E |
| 10/14/2004  15:02 | Sudbury Evidence Control Unit | C119 |
| 02/21/2005  14:52 | Cold Storage "B" | CSB H50 |
| 05/30/2005  13:41 | Cold Storage "B" | CSB H48 |
| Evidence moved to make room for bigger boxes that were located in CSA. TCK/JKC 5/30/05 | | |
| 06/29/2005  15:58 | Cold Storage "B" | CSB A28 |

Evidence was moved to different shelves to make room for incoming cases and organize CSB. TCk 6/29/05

| 02/21/2006 15:15 | Evidence Disposition | Returned to Submitting Agency |

**11**

**3-5**   BOX: Pair of boots - Steven Putnam -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/29/2004 15:29 | LIMS User | Bruce W. Cranstoun |
| 01/29/2004 15:29 | Sudbury Evidence Control Unit | C12 |
| 08/20/2004 15:04 | Done Room -Sudbury (ECU) | D4E |
| 10/14/2004 15:02 | Sudbury Evidence Control Unit | C119 |
| 02/21/2005 14:52 | Cold Storage "B" | CSB H50 |
| 05/30/2005 13:41 | Cold Storage "B" | CSB H48 |
| | Evidence moved to make room for bigger boxes that were located in CSA. TCK/JKC 5/30/05 | |
| 06/29/2005 15:58 | Cold Storage "B" | CSB A28 |
| | Evidence was moved to different shelves to make room for incoming cases and organize CSB. TCk 6/29/05 | |
| 02/21/2006 15:15 | Evidence Disposition | Returned to Submitting Agency |

**3-6**   BOX: Jacket - # 2 - Steven Putnam -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/29/2004 15:29 | LIMS User | Bruce W. Cranstoun |
| 01/29/2004 15:29 | Sudbury Evidence Control Unit | C12 |
| 08/20/2004 15:04 | Done Room -Sudbury (ECU) | D4E |
| 10/14/2004 15:02 | Sudbury Evidence Control Unit | C119 |
| 02/21/2005 14:52 | Cold Storage "B" | CSB H50 |
| 05/30/2005 13:41 | Cold Storage "B" | CSB H48 |
| | Evidence moved to make room for bigger boxes that were located in CSA. TCK/JKC 5/30/05 | |
| 06/29/2005 15:58 | Cold Storage "B" | CSB A28 |
| | Evidence was moved to different shelves to make room for incoming cases and organize CSB. TCk 6/29/05 | |
| 02/21/2006 15:15 | Evidence Disposition | Returned to Submitting Agency |

**4-1**   PENV: Compact Disk - - master of vehicle at Harvard P.D. -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 02/11/2004 14:52 | CSSS - Devens (304) | CSSS Case File Envelope |

**4-1.1**   PENV: Compact Disk - - working copy of vehicle at Harvard P.D. -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 02/11/2004 14:52 | CSSS - Devens (304) | CSSS Case File Envelope |

**5-1**   CODKIT: Saliva Collection Kit - Steven Putnam -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 11/29/2004 11:03 | LIMS User | Diana L. Howery |
| 11/29/2004 11:08 | Sudbury Evidence Control Unit | C17 |
| 07/12/2005 8:21 | Criminalistics Section | CRIM - Lynne Sarty's Work Area |
| 07/12/2005 9:36 | Sudbury Evidence Control Unit | Evidence Room Freezer 3 |
| 07/22/2005 14:01 | Cold Storage "B" | Long Term Storage |
| | Transferred to make space in Freezer 3. JKC/TCK 07/22/05. | |
| 11/06/2008 12:43 | Cold Storage "B" | Long Term Storage - Known Standards |

12

| 06/21/2012  9:53 | Cold Storage "B" | 2004 Known Standards - Long Term Storage |
|---|---|---|

## 5-1.1        HSP: Saliva Collection Kit - Steven Putnam -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 07/12/2005  9:14 | LIMS User | Lynne Sarty |
| 07/12/2005  9:14 | LIMS User | Lynne Sarty |
| 07/13/2005  8:06 | Evidence Disposition | Mailed to Cellmark Diagnostics |
| 04/10/2007  14:05 | Sudbury Evidence Control Unit | Evidence Room Freezer 5 |
|     Returned from Orchid Cellmark | | |
|     DLH 11-07-07 | | |
| 11/07/2007  16:29 | LIMS User | Diana L. Howery |
| 11/07/2007  16:30 | Sudbury Evidence Control Unit | C1-B |
| 11/09/2007  13:03 | Cold Storage "B" | Long Term Storage |
| 03/10/2009  9:45 | Cold Storage "B" | Long Term Storage - Cuttings |
| 12/20/2012  8:30 | Cold Storage "B" | 2004 Cuttings - Long Term Storage |

## FILE-304        FILE: Case File of CSSS - Devens - -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/27/2004  13:38 | CSSS - Devens (304) | CSSS Lab Area |
| 11/28/2005  14:14 | CSSS - Devens (304) | CSSS Closed Case File Cabinet |
| 05/16/2007  13:00 | LIMS User | Jessica L. Holbrook |
| 05/18/2007  15:18 | Done Room -Sudbury (ECU) | DONE ROOM KIT SHELF |
|     Temporarily on hold - all files for transport to North Sudbury archive file room. JLH 5/16/07. | | |
| 05/21/2007  9:31 | LIMS User | Jessica L. Holbrook |
| 05/21/2007  14:18 | CSSS - Sudbury (301) | CSSS Closed Case File Archive |
| 10/31/2014  14:55 | CSSS - Maynard | CSSS Closed Case File Archive |

## file        FILE: Criminalistics File Folder -  electronic data received 9/23/05; deduced minor matches suspect, Cellmark Lab #MA05-0003, CD# 360 -

| Date / Time | Custody Of | Location / Person |
|---|---|---|
| 01/27/2004  14:01 | Cases to be filed | Cases To Be Filed In Active System |
| 01/27/2004  14:13 | Cases to be filed | Streamline Cases to be Assigned |
| 01/30/2004  16:44 | Mailbox for | Debbie McKillop Shields |
| 02/02/2004  16:45 | Cases to be filed | Streamline Cases to be Assigned-Crim |
| 02/02/2004  16:48 | Criminalistics Section | CRIM - Erica Blais's Work Area |
| 02/03/2004  11:09 | Criminalistics Section | Cases In Review |
|     TPS | | |
| 02/09/2004  14:37 | Criminalistics Section | CRIM - Tom Sendlenski's Work Area |
| 03/03/2004  10:32 | Criminalistics Section | Cases In Review |
|     PL | | |
| 03/25/2004  12:32 | Cases to be filed | Completed File System |
| 10/13/2004  16:17 | Cases to be filed | Crim Cases to be Assigned |
| 11/03/2004  14:55 | Cases to be filed | Roundtable Cases to be Assigned |
| 12/02/2004  14:34 | Criminalistics Section | CRIM - Deanna R. Dygan's Work Area |
| 01/04/2005  21:26 | Criminalistics Section | Cases In Review |
|     BAS | | |
| 01/05/2005  14:11 | Cases to be filed | Completed File System |
| 01/20/2005  12:01 | Cases to be filed | Cases being processed by CMU |
| 03/29/2005  15:13 | Mailbox for | Jennifer J. Preisig |
| 03/29/2005  15:21 | Criminalistics Section | CRIM - Jennifer Preisig's Work Area |
| 03/29/2005  16:30 | Criminalistics Section | Cases In Review |
| 03/30/2005  15:03 | Cases to be filed | Completed File System |
| 05/03/2005  12:30 | Cases to be filed | Cases being processed by CMU |
| 06/14/2005  11:03 | DNA SECTION | DNA cases held |

Exhibit F

75 Mass.App.Ct. 472
Appeals Court of Massachusetts,
Worcester.

COMMONWEALTH
v.
Steven M. PUTNAM.

No. 07–P–958.
|
Argued April 7, 2009.
|
Decided Oct. 19, 2009.

**Synopsis**

**Background:** Defendant was convicted by a jury in the Superior Court Department, Worcester County, Francis R. Fecteau, J., of home invasion and armed assault. Defendant appealed.

**Holdings:** The Appeals Court, Katzmann, J., held that:

[1] evidence was sufficient to establish unlawful entry, in support of convictions for home invasion and armed assault in a dwelling;

[2] the trial court's jury instruction on consent to enter a dwelling was proper and did not create a substantial risk of miscarriage of justice; and

[3] defendant's convictions for both armed assault in a dwelling and home invasion were not duplicative.

Affirmed.

West Headnotes (5)

[1]   **Assault and Battery** ⟜ Aggravated or felony assault

*Comm. Exhibit F*

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 12/11/2015 | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant: Steven Putnam<br>Attorney: Donna Marie Haran, Esq.<br>Holding Institution: MCI - Cedar Junction (at Walpole) | |
| 12/11/2015 | MEMORANDUM & ORDER:<br><br>For the foregoing reasons, it is hereby ORDERED that the defendant's Motion for New Trial is DENIED. | 78 |
| 12/28/2015 | Notice of appeal filed (Motion for New Trial, Judge Frison)<br><br>Applies To: Putnam, Steven (Defendant) | 79 |
| 04/06/2016 | Statement of Case Appeal filed: | 80 |
| 04/06/2016 | Appeal: notice of assembly of record | 81 |
| 04/11/2016 | Notice of Entry of appeal received from the Appeals Court | 82 |
| 05/18/2016 | Rescript received from Appeals Court; judgment AFFIRMED Order denying the motion for new trial affirmed.. | 83 |
| 07/25/2016 | Defendant 's  Motion for Post Conviction Access to Forensic and Scientific Analysis; Affidavit in Support | 84 |
| 08/02/2016 | ORDER: re: Deft's Motion for Post-Conviction Access to Forensic and Scientific Analysis<br>...Because the trial judge is not available to hear this matter, the case is assigned to Judge Richard T. Tucker for any action he may deem appropriate. | 85 |
| 08/02/2016 | ORDER: re: Motion for Post Conviction Access to Forensic and Scientific Analysis<br>...if the Commonwealth wishes to respond to this motion addressing the sole issue of whether the motion meets the requirements under G. L. c.278A, s3(e), the Commonwealth shall do so within 10 days of this Order. If the Commonwealth does not intend to file a response at this stage, Asst. Clerk, Gail Dempsey should be notified.<br><br>So Ordered. | 86 |
| 08/02/2016 | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant: Steven Putnam<br>Attorney: Donna Marie Haran, Esq.<br>Holding Institution: MCI - Cedar Junction (at Walpole) | |
| 09/06/2016 | ORDER: on Defendant's Motion for Post-Conviction Access to Forensic and Scientific Analysis<br>Commonwealth has 60 days to respond. | 87 |
| 09/08/2016 | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant: Steven Putnam<br>Attorney: Donna Marie Haran, Esq.<br>Holding Institution: MCI - Cedar Junction (at Walpole) | |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Disposed | 05/23/2014 | |

**Burglary** ⟜ Breaking and entry

Evidence was sufficient to establish unlawful entry, in support of convictions for home invasion and armed assault in a dwelling; the victim became disturbed and frightened by the defendant's visit earlier on the day of the incident, she telephoned her neighbor to warn him of the defendant's "bad shape" and instructed him to telephone the police if she telephoned him back, when defendant returned later that day the victim permitted him to enter because she "thought it would be better to open the door than to try and keep him on the other side," and defendant was not a frequent visitor to the victim's house. M.G.L.A. c. 265, §§ 18A,18C.

Cases that cite this headnote

[2]   **Assault and Battery** ⟜ Nature and Elements of Criminal Assault

**Assault and Battery** ⟜ Consent

**Burglary** ⟜ Breaking and Entry

**Burglary** ⟜ Consent of owner or occupant of building

Entry is an element that must be proven by the Commonwealth for the offenses of both home invasion and armed assault in a dwelling; an entry into a dwelling is not unlawful if it is consensual, in response to an invitation, or privileged. M.G.L.A. c. 265, §§ 18A, 18C.

2 Cases that cite this headnote

[3]   **Assault and Battery** ⟜ Consent

**Burglary** ⟜ Consent of owner or occupant of building

For the purpose of the offenses of both home invasion and armed assault in a dwelling, purported consent to enter a dwelling cannot be considered legally significant unless the occupant has been made aware that the person at the door is armed with a dangerous weapon and is about to commit an assault once inside. M.G.L.A. c. 265, §§ 18A, 18C.

3 Cases that cite this headnote

[4]   **Burglary** ⟜ Owner's consent

The trial court's jury instruction on consent to enter a dwelling, which provided that consent "may be negated if the person giving consent is unaware of the defendant's being armed with a dangerous weapon or of an intent to commit a crime while inside," was proper and did not create a substantial risk of miscarriage of justice, in

prosecution for home invasion; the instruction informed the jury that the absence of either element negated consent. M.G.L.A. c. 265, § 18C.

1 Cases that cite this headnote

[5]   Criminal Law ⮌ Robbery and burglary
Defendant's convictions for both armed assault in a dwelling and home invasion were not duplicative, even though the convictions were both based on the same act; the two crimes in question had mutually exclusive elements. M.G.L.A. c. 265, §§ 18A, 18C.

1 Cases that cite this headnote

**Attorneys and Law Firms**

**\*\*970** Debra S. Krupp, Committee for Public Counsel Services, for the defendant.

Donna–Marie Haran, Assistant District Attorney, for the Commonwealth.

Present: COHEN, KATZMANN, & GRAINGER, JJ.

**Opinion**

KATZMANN, J.

**\*472** Having been convicted by a Superior Court jury of home invasion, in violation of G.L. c. 265, § 18C; and armed assault in a dwelling, in violation of G.L. c. 265, § 18A, the defendant Steven M. Putnam now appeals.[1] He contends **\*473** that the convictions must be reversed because the evidence was insufficient to prove that he entered the alleged victim's home unlawfully, and because the instruction on consent to enter was erroneous. He also claims that his conviction of armed assault in a dwelling must be reversed because it was duplicative of the home invasion conviction. We affirm.

*Background.* We view the evidence in the light most favorable to the Commonwealth. *Commonwealth v. Nolin,* 448 Mass. 207, 215, 859 N.E.2d 843 (2007). The victim, a self-employed counseling psychologist, lived on Old Mill Road in Harvard. Old Mill Road is a two-lane road with fields and woods, as well as isolated houses in the surrounding area. The victim's nearest neighbors were Anne Marie Arnold and Hank Emerson, who lived together about one-eighth of one mile down the road, on a working farm. The defendant lived on

Com. v. Putnam, 75 Mass.App.Ct. 472 (2009)

914 N.E.2d 969

Arnold's property in an apartment across from the main house. He worked on the farm as a handyman and a helper.

The victim first met the defendant in 2001 at a block party. In 2002, the victim paid the defendant to clean leaves from her roof and her gutters. Around the same time, they had a few brief conversations. The victim occasionally saw the defendant on Arnold's property.

The day after Thanksgiving in 2003, in the early evening, the defendant knocked **971 on the victim's front door and asked to come into her house. He appeared upset and intoxicated. After she allowed him in, the defendant asked the victim for help; he told her that he had been drinking and doing drugs and that he was not taking his medication. The victim told the defendant to stop drinking, to stop doing drugs, and to take his medication. The defendant then rambled on for about one-half hour; the victim thought the defendant was asking for her professional opinion but she did not give him one. The victim tried to bring the conversation to a close; the defendant eventually left. The next day, the victim called Emerson and told him that she was concerned about the defendant, that she thought he was in bad shape and doing drugs, and that he seemed mentally unstable.

On January 18, 2004, Arnold asked the defendant to leave the property because he had not performed any work on the farm for the prior two months. Arnold suspected that the defendant was drinking and doing drugs.

*474 On January 26, 2004, around 8:30 P.M., while the victim was on the telephone, the defendant knocked on her door. The victim opened the door a few inches and saw the defendant. The defendant said that he wanted to come in and speak with her. She told him to go home and to telephone her in one-half hour, and she would speak to him on the telephone. She then closed the door and returned to her telephone conversation. Around 8:55 P.M., the victim finished her conversation and telephoned Emerson to inform him that the defendant had been to her house and that "he might be in bad shape." She also told Emerson that if he received a telephone call from her that evening, he should telephone the police and have them come to her house, no matter what she said. [2]

Shortly after speaking with Emerson, the victim heard a knock on her door. When she went to the door, the defendant was standing there and appeared distressed. She opened the door because the door had glass in it and she "thought it would be better to open the door than to try and keep him on the other side." The defendant came into the house and the victim told him to sit at the dining room table. She sat at the table with him and noticed that he was disturbed, and that he had blood on his left hand. She asked the defendant if he was suicidal, to which he replied that he was not. The defendant began to talk to the victim, mumbling to the point that she "had trouble understanding him." During this conversation, the victim

got up, picked up the telephone, and told the defendant that she did not think he was all right, that she thought they should telephone Emerson, and that she thought he needed some help. The defendant then grabbed her around her back, shoved her, punched her face, and violently knocked the telephone out of her hand, throwing it on the floor where it broke. He then began to punch the victim, pull her hair, and maneuver her around. As he was beating the victim, he asked, "Why did you call Hank?"

At some point, the defendant pulled a knife out of his pocket. He said, "You can make this hard or you can make this easy." He then tried to force the victim to go upstairs. When they got to the bottom of the stairs, the victim sat "heavily" and resisted. **\*475** After the defendant's attempts to push the victim up the stairs failed, he threw her on a couch located **\*\*972** near the stairs in her living room and ripped off the clothing she wore on the bottom of her body.[3] He then pulled his pants down and lay on top of the victim. He put his finger into the victim's vagina and began thrusting.[4] The victim kept telling the defendant that "this ... was not good," that it was "not going to happen," and that it was something she "didn't want to do." Nonetheless, the defendant continued raping her.

The defendant then sat up and told the victim to take her top off. She sat up and made a gesture as though she was going to comply. When the defendant began to pull his own shirt over his head, the victim ran toward the front door. She ran outside, naked from the waist down and not wearing shoes, towards Arnold's farmhouse. Arnold and Emerson let her into their house and the victim, who was hysterical and sobbing, told them that the defendant "had tried to rape" her. Emerson immediately called the police and they arrived at the house within ten minutes.

The police proceeded to the victim's residence and conducted a preliminary search. The police found a knife outside the victim's house.

The defendant testified in his own defense. He admitted to having had a long-term alcohol problem. When he moved into Arnold's apartment in 2000 he had been sober for eleven years; however, he did not remain sober. The defendant testified that he came to the victim's house on the day of the incident because he knew that the victim was a doctor and he thought she could help him in some way, such as getting him into a detoxification program. When he came to the victim's home, she invited him into the house. After some conversation, the victim told the defendant that she was going to telephone Emerson, and that Emerson would telephone the police. The defendant became afraid; he recently had been involved in two "DUI" (driving under the influence) cases and had been warned that if he was convicted of a third offense he would go to jail for six months.

**\*476** The defendant testified that he then grabbed the victim and tried to persuade her not to telephone Emerson. Next, he kissed her, and he thought that she kissed him back. The defendant then offered to the victim to go upstairs but she refused. Next, they were on the couch; the defendant thought that the victim went to the couch willingly. He thought they were engaged in a consensual activity until the victim asked the defendant to stop. In response, the defendant stopped. He then sat up, the victim sat up, and, then, the victim ran out the door. The defendant denied putting his finger in the victim's vagina. Although the defendant had a knife, he did not threaten the victim with it. He tried to give the victim his knife because he was afraid that he was going to cut his wrists.

A few minutes after the victim ran out of her house, the defendant returned to his apartment, grabbed "a bunch of beers," and walked out into the woods. The next day, he found himself in Leominster, walking down the railroad tracks. His mother picked him up at the Leominster Public Library and brought him to Emerson Hospital, where he was arrested.

**\*\*973** **[1]** *Discussion.* A. *Convictions of home invasion and of armed assault in a dwelling.* The defendant claims that there was insufficient evidence of an unlawful entry to sustain convictions of home invasion and of armed assault in a dwelling. The crime of home invasion, G.L. c. 265. § 18C, requires that the defendant "(1) 'knowingly enter[ed] the dwelling place of another'; (2) 'knowing or having reason to know that one or more persons are present within' (or entered without such knowledge but then remained in the dwelling place after acquiring or having reason to acquire such knowledge); (3) 'while armed with a dangerous weapon'; and (4) 'use[d] force or threaten [ed] the imminent use of force upon any person within such dwelling place whether or not injury occur[red], or intentionally cause[d] any injury to any person within such dwelling place.' " *Commonwealth v. Doucette,* 430 Mass. 461, 465–466, 720 N.E.2d 806 (1999), quoting from G.L. c. 265. § 18C. See *Commonwealth v. Brown,* 451 Mass. 200, 205, 884 N.E.2d 488 (2008). See also *Commonwealth v. Stokes,* 440 Mass. 741, 746–747, 802 N.E.2d 88 (2004). "Conviction under G.L. c. 265, § 18A, of armed assault in a dwelling requires proof of three elements: (1) entry of a dwelling while armed[;] (2) an assault on someone in the dwelling; and **\*477** (3) a specific intent, accompanying the assault, to commit a felony." *Commonwealth v. Donoghue,* 23 Mass.App.Ct. 103, 111–112, 499 N.E.2d 832 (1986).

**[2]** **[3]** In short, entry is an element that must be proven by the Commonwealth for the offenses of both home invasion and armed assault in a dwelling. An entry into a dwelling is not unlawful if it is consensual, in response to an invitation, or privileged. See *Commonwealth v. Mahar,* 430 Mass. 643, 646–647, 722 N.E.2d 461 (2000). See also *Commonwealth v. Dunn,* 43 Mass.App.Ct. 58, 60, 680 N.E.2d 1178 (1997); *Commonwealth v. Fleming,* 46 Mass.App.Ct. 394, 396, 706 N.E.2d 1138 (1999). "A consensual entry, however, does not always correlate with a lawful entry.... [P]urported consent [to entry] cannot be considered

legally significant unless the occupant has been made aware that the person at the door is armed with a dangerous weapon and is about to commit an assault once inside." *Mahar, supra* at 652–653, 722 N.E.2d 461. See *Commonwealth v. Morris,* 64 Mass.App.Ct. 51, 54, 831 N.E.2d 338 (2005). Thus, the *Mahar* court affirmed the defendant's home invasion conviction, concluding that the entry was unlawful where the defendant was admitted into the home by a person who was unaware that the defendant entered the home while armed, with the intent to commit an assault upon that person in the dwelling. *Mahar, supra* at 647, 651–653, 722 N.E.2d 461.

In this case, the jury's determination was based largely on a credibility evaluation of the testimony of the victim and of the defendant. While the crime of home invasion "is not intended to encompass situations where an invited guest in a home suddenly turns violent," *id.* at 652 n. 6, 722 N.E.2d 461, this is not the evidence here. Here, the victim became disturbed and frightened by the defendant's visit earlier on the day of the incident; she telephoned her neighbor to warn him of the defendant's "bad shape" and instructed him to telephone the police if she telephoned him back. As in *Mahar,* while the victim initially permitted the defendant's entry, a jury permissibly could find that she did not know he was armed with a knife and that he intended to attack her once inside. Additionally, here, when the defendant arrived at the victim's house, she let him in her house because she "thought it would be better to open the door than to try and keep him on the other side." From all this evidence, the jury could infer that the defendant **974 had instilled fear in the victim, who only allowed *478 him into her house because she felt that she had no other choice. Moreover, there was no evidence that the defendant was a frequent visitor at the victim's house, that he was accustomed to entering without explicit permission, or that the defendant and the victim were in any type of ongoing relationship. See generally *id.* at 647, 722 N.E.2d 461. Contrast *Commonwealth v. Fleming,* 46 Mass.App.Ct. at 396–397, 706 N.E.2d 1138 (defendant entitled to jury instruction on consensual entry where defendant was frequent visitor at facility); *Commonwealth v. Siunnarano,* 50 Mass.App.Ct. 312, 314–316, 737 N.E.2d 488 (2000) (defendant entitled to jury instruction on consent where there was evidence that defendant and victim had been in some form of ongoing relationship and that defendant was frequent visitor at victim's house). The evidence showed that, once inside the house, the defendant pulled out a knife, and ultimately dragged the victim to the couch and raped her. The totality of the evidence warranted the jury's determination that the defendant's entry into the victim's dwelling was unlawful.

**[4]**  B. *Jury instructions.* In defining home invasion, the judge first read to the jury the pertinent text of G.L. c. 265, § 18C, and then gave an almost verbatim recital of the model jury instruction on home invasion. See Massachusetts Superior Court Criminal Practice Jury Instructions § 2.31 (Mass. Continuing Legal Educ.1999 & Supp.2003). Because an issue in the case was whether the defendant lawfully entered the victim's home, in keeping with *Morris,* 64

Mass.App.Ct. at 54, 831 N.E.2d 338, the judge included in his instruction guidance regarding consensual entry. The judge instructed:

> "The first element which the Commonwealth must prove beyond a reasonable doubt is that the defendant entered the dwelling of another. An entry is the unlawful, unconsented making of one's way into a dwelling.... The Commonwealth must also prove beyond a reasonable doubt that the defendant had no right of habitation or occupancy at the time of entry, that the defendant made a nonconsensual entry into the dwelling place. While consent to enter may be considered as evidence that the entry was lawful, consent may be negated if the person giving consent is unaware of the defendant's being armed with a dangerous weapon or of an intent to commit a crime while inside."

**\*479** The defendant asserts that the judge erred and that the error created a substantial risk of a miscarriage of justice when he instructed that consent to enter a dwelling "may be negated if the person giving consent is unaware of the defendant's being armed with a dangerous weapon *or* of an intent to commit a crime while inside" (emphasis supplied).[5] He points to the court's holding in *Mahar*, 430 Mass. at 652–653, 722 N.E.2d 461, that "consent [to entry] cannot be considered legally significant unless the occupant has been made aware that the person at the door is armed with a dangerous weapon and is about to commit an assault once inside." The defendant claims that the jury should have been instructed that consent may be negated if the person giving consent is unaware that the defendant is armed *and* intends to commit a crime once inside the dwelling.

**\*\*975** The defendant's argument is unpersuasive because the judge's instruction is indeed consistent with *Mahar*, which requires both elements for consent to be valid. The instruction, conversely, properly informs the jury, that the absence of either element will *negate* consent. *Mahar* does not require that the Commonwealth prove that the occupant has been made aware *both* that defendant was armed with a dangerous weapon and that he intended to commit an assault once inside the dwelling. That is to say, if the Commonwealth shows that either element was not present, then there was no consent. Consistent with a commonsense understanding, the law protects the sanctity and the safety of the occupant within her dwelling, and reflects the view that the entry by an outsider can be considered permissive only if the occupant, with relevant information, is aware of the risks to her safety, yet freely allows the entry. Thus, permissive entry, premised on consent to enter, is negated if the occupant purportedly giving consent is not aware that the person who is entering is armed. Alternatively, if the occupant is aware that the person is armed, but unaware that he intends to commit a crime once inside, permissive entry also is negated. "[A]s a matter of public policy, ... an occupant of a dwelling cannot consent to allow an armed intruder ... inside to

**\*480** commit an assault." *Id.* at 653, 722 N.E.2d 461. See *Morris,* 64 Mass.App.Ct. at 54 n. 4, 831 N.E.2d 338. There was no error here.[6]

[5]   C. *Duplicative convictions.* Finally, the defendant asserts that while armed assault in a dwelling is not a lesser included offense of home invasion, because the defendant was convicted of both offenses on the basis of the same act, and the two crimes are so closely related, the defendant should not be subject to punishment for both.

The traditional rule, embodied in *Morey v. Commonwealth,* 108 Mass. 433, 434 (1871), and employed by Massachusetts courts on the issues of double jeopardy and duplicative offenses, provides that "a defendant may properly be punished for two crimes arising out of the same course of conduct provided that each crime requires proof of an element that the other does not." *Commonwealth v. Keohane,* 444 Mass. 563, 574, 829 N.E.2d 1125 (2005), quoting from *Commonwealth v. Arriaga,* 44 Mass.App.Ct. 382, 385–386, 691 N.E.2d 585 (1998).[7] The vitality of that elements-based rule was affirmed in *Commonwealth v. Vick,* 454 Mass. 418, 910 N.E.2d 339 (2009). There, the Supreme Judicial Court stated, "This elements-based approach remains the standard for determining whether multiple convictions stemming from one criminal transaction are duplicative. See **\*\*976** *Commonwealth v. Cabrera,* 449 Mass. 825, 827, 874 N.E.2d 654 (2007); *Commonwealth v. Gallant,* 65 Mass.App.Ct. 409, 413, 840 N.E.2d 998 (2006); ... *Arriaga, supra* at 386–389, 691 N.E.2d 585." *Vick, supra* at 431, 910 N.E.2d 339. "It bears repeating that, where ... neither crime is a lesser included offense of the other, multiple punishments are permitted **\*481** even where the offenses arise from the very same criminal event. See *Morey v. Commonwealth,* [*supra* ]." *Vick, supra* at 436, 910 N.E.2d 339.[8]

Here, the two crimes in question have mutually exclusive elements; specifically, the requirement of scienter distinguishes these two offenses. *Commonwealth v. Ruiz,* 426 Mass. 391, 393 & n.3, 688 N.E.2d 963 (1998).[9] As such, and under the *Morey* rule, the defendant can be prosecuted for, and convicted of, both offenses simultaneously, even though they arise from the single course of conduct. The convictions of armed assault in a dwelling and of home invasion are not duplicative, and, therefore, the defendant properly is subject to punishment for both offenses.

*Judgments affirmed.*

**All Citations**

75 Mass.App.Ct. 472, 914 N.E.2d 969

Com. v. Putnam, 75 Mass.App.Ct. 472 (2009)

914 N.E.2d 969

## Footnotes

1   The defendant does not appeal his convictions of rape, in violation of G.L. c. 265, § 22(*a*); and assault and battery, in violation of G.L. c. 265, § 13A.

2   After hanging up with the victim, Emerson telephoned the police, alerted them to the situation, and provided the victim's address, in case he telephoned back with an emergency.

3   A chemist at the Massachusetts State police crime laboratory analyzed the victim's pants and located several tears on the exterior and the interior crotch area. The chemist testified that the pants were torn in a manner different from normal wear and tear such as when a person sits down and tears her pants.

4   The defendant was unable to penetrate the victim with his penis.

5   Because the defense counsel did not object to the jury instructions at trial, we examine the alleged error, if any, for whether it created a substantial risk of miscarriage of justice. See *Commonwealth v. Noble*, 429 Mass. 44, 45–47, 707 N.E.2d 819 (1999).

6   Even if the instruction were erroneous, as discussed, *supra*, there was ample evidence to warrant the jury's conclusion that the entry was not consented to, and therefore was unlawful. Hence, even if error, the error did not create a substantial risk of a miscarriage of justice.

   Regarding entry as relating to armed assault in a dwelling, the judge instructed: "The second element which the Commonwealth must prove beyond a reasonable doubt is that the defendant entered the dwelling. It is not necessary, as I said before, that the entry be complete. It would be sufficient if any part of the defendant's body physically enters the building." The instruction was not error.

7   "So long as each offense includes an additional element that the other does not, 'neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not duplic[ative].' " *Arriaga, supra* at 386, 691 N.E.2d 585, quoting from *Commonwealth v. Jones*, 382 Mass. 387, 393, 416 N.E.2d 502 (1981).

8   Discussing cases relied on by the defendant here, including *Commonwealth v. Keohane, supra* at 574–575, 829 N.E.2d 1125, the *Vick* court noted, *supra* at 433–434, that "it may appear that our well-established, elements-based approach to analyzing purported duplicative convictions, as first articulated in *Morey*, has been expanded over the years to permit a conduct-based analysis of the facts of a particular case to determine whether a defendant's acts in one criminal event are so closely related as to constitute in substance a single crime such that the defendant can be punished only for the greater offense.... That was not our intention."

9   "Both §§ 18A and 18C require the Commonwealth to prove that the defendant was armed with a dangerous weapon at the time of entry into a dwelling house. If the Commonwealth seeks, however, to impose the more severe penalties of § 18C it must establish either that a defendant knew or had reason to know that one or more persons were present within the dwelling house at the time of entry or that the defendant gained such knowledge after entry but nevertheless remained there for some period of time prior to attacking or threatening the person. These scienter requirements distinguish § 18C from § 18A." *Commonwealth v. Ruiz, supra* (footnote omitted).

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

83 Mass.App.Ct. 1115
**Unpublished Disposition**
**NOTICE: THIS IS AN UNPUBLISHED OPINION.**
Appeals Court of Massachusetts.

COMMONWEALTH
v.
Steven M. PUTNAM.

No. 12–P–96.
|
February 26, 2013.

By the Court (GREEN, GRAHAM & SULLIVAN, JJ.).

*MEMORANDUM AND ORDER PURSUANT TO RULE 1:28*

**\*1** On March 1, 2006, the defendant was convicted by a Superior Court jury of home invasion, armed assault in a dwelling, rape (digital penetration), and assault and battery. On his direct appeal, this court affirmed. See *Commonwealth v. Putnam,* 75 Mass.App.Ct. 472 (2009). The Supreme Judicial Court denied further appellate review. See *Commonwealth v. Putnam,* 455 Mass. 1105 (2009).

On September 14, 2011, the defendant filed a pro se motion for a new trial which was denied by a motion judge who was not the trial judge. On appeal, he argues that the prosecutor engaged in a "pattern of gender discrimination in the selection of the jury"; that the trial judge allowed in evidence improper first complaint testimony; that the trial judge improperly allowed the jury to review a portion of the trial testimony; and that his trial and appellate counsel were ineffective. For substantially the reasons set forth in the brief of the Commonwealth at pages 8 through 31, we affirm. We add the following observations.

*Background.* In 2004, the defendant, a handyman who occasionally performed work for the victim, a psychiatrist, went to the victim's house, ostensibly seeking help in finding a detoxification program. Once inside the house, the defendant, armed with a knife, grabbed the victim, and after a struggle, while fully clothed, began trying to "hump" her and partially disrobed her. The defendant stopped and ordered the victim to fully disrobe, but, while he was himself disrobing, the victim ran to her neighbor's house, naked from the waist down.

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

Exhibit G

### 0485CR00666 Commonwealth vs. Putnam, Steven

| | |
|---|---|
| **CASE TYPE:** Indictment | **FILE DATE:** 04/16/2004 |
| **ACTION CODE:** 265/18C/A-0 | **CASE TRACK:** I - Inventory |
| **DESCRIPTION:** HOME INVASION c265 §18C | |
| **CASE DISPOSITION DATE:** 05/23/2014 | **CASE STATUS:** Open |
| **CASE DISPOSITION:** Disposed by Jury Verdict | **STATUS DATE:** 04/16/2004 |
| **CASE JUDGE:** | **CASE SESSION:** Criminal 1 |

| PARTIES |
|---|

**Prosecutor**
Commonwealth

**Attorney for the Commonwealth**                    664526
Donna Marie Haran
District Attorney's Office
District Attorney's Office
225 Main St
Worcester, MA 01608
Work Phone (508) 755-8601
Added Date: 10/21/2011

**Defendant**
Putnam, Steven
MCI Norfolk
P.O. Box 43
Norfolk, MA 02056

**Appointed - Indigent Defendant**                    676543
Merritt Spencer Schnipper
Schnipper Hennessy PC
Schnipper Hennessy PC
25 Bank Row
Suite 2S
Greenfield, MA 01301
Work Phone (413) 325-8541
Added Date: 09/25/2017

**Other interested party**
Harvard PD

-27-

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | EVENTS | | | |
|---|---|---|---|---|
| **Date** | **Session** | **Event** | **Result** | **Resulting Judge** |
| 05/13/2004 | Criminal 1 | Arraignment | Held as Scheduled | |
| 06/07/2004 | Criminal 1 | Pre-Trial Conference | Held as Scheduled | |
| 06/21/2004 | Criminal 1 | Pre-Trial Conference | Held as Scheduled | |
| 06/30/2004 | Criminal 1 | Pre-Trial Conference | Held as Scheduled | |
| 07/09/2004 | Criminal 1 | Pre-Trial Conference | Held as Scheduled | |
| 08/04/2004 | Criminal 1 | Pre-Trial Conference | Held as Scheduled | |
| 08/24/2004 | Criminal 1 | Pre-Trial Conference | Rescheduled | |
| 10/07/2004 | Criminal 1 | Pre-Trial Conference | Held as Scheduled | |
| 10/07/2004 | Criminal 1 | Non-Evidentiary Hearing | Held as Scheduled | |
| 11/08/2004 | Criminal 1 | Jury Trial | Canceled | |
| 11/08/2004 | Criminal 1 | Status Review | Held as Scheduled | |
| 11/22/2004 | Criminal 1 | Pre-Trial Conference | Held as Scheduled | |
| 11/29/2004 | Criminal 1 | Status Review | Held as Scheduled | |
| 01/31/2005 | Criminal 1 | Status Review | Held as Scheduled | |
| 03/23/2005 | Criminal 1 | Pre-Trial Conference | Held as Scheduled | |
| 05/23/2005 | Criminal 1 | Status Review | Held as Scheduled | |
| 07/28/2005 | Criminal 1 | Status Review | Held as Scheduled | |
| 09/26/2005 | Criminal 1 | Status Review | Held as Scheduled | |
| 10/14/2005 | Criminal 1 | Evidentiary Hearing to Dismiss | Held as Scheduled | |
| 11/16/2005 | Criminal 1 | Final Pre-Trial Conference | Held as Scheduled | |
| 11/29/2005 | Criminal 1 | Hearing | Held as Scheduled | |
| 12/08/2005 | Criminal 1 | Jury Trial | Canceled | |
| 12/08/2005 | Criminal 1 | Status Review | Held as Scheduled | |
| 01/18/2006 | Criminal 1 | Final Pre-Trial Conference | Held as Scheduled | |
| 02/24/2006 | Criminal 1 | Jury Trial | Not Held | |
| 02/27/2006 | Criminal 1 | Jury Trial | Not Held | |
| 02/27/2006 | Criminal 2 | Jury Trial | Held as Scheduled | |
| 02/28/2006 | Criminal 2 | Jury Trial | Held as Scheduled | |
| 03/01/2006 | Criminal 2 | Jury Trial | Held as Scheduled | |
| 03/03/2006 | Criminal 2 | Hearing for Sentence Imposition | Held as Scheduled | |
| 11/18/2016 | Civil / Criminal Trials | Motion Hearing | Rescheduled | Tucker |
| 11/21/2016 | Civil / Criminal Trials | Motion Hearing | Held as Scheduled | Tucker |
| 11/21/2016 | Criminal 1 | Motion Hearing | Rescheduled | Tucker |

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
Docket Report

| 12/16/2016 | Civil / Criminal Trials | Conference to Review Status | Held as Scheduled | Tucker |
|---|---|---|---|---|
| 02/22/2017 | Criminal 2 | Conference to Review Status | Rescheduled | Tucker |
| 02/24/2017 | Criminal 1 | Conference to Review Status | Rescheduled | Tucker |
| 02/24/2017 | Criminal 2 | Conference to Review Status | Not Held | Tucker |
| 03/10/2017 | Criminal 2 | Conference to Review Status | Held as Scheduled | Tucker |
| 04/27/2017 | Criminal 2 | Conference to Review Status | Not Held | Tucker |
| 04/27/2017 | Civil / Criminal Trials | Conference to Review Status | Held as Scheduled | Tucker |
| 06/09/2017 | Civil / Criminal Trials | Conference to Review Status | Held as Scheduled | Tucker |
| 07/07/2017 | Criminal 2 | Conference to Review Status | Held as Scheduled | Tucker |
| 08/11/2017 | Criminal 2 | Conference to Review Status | Rescheduled | Tucker |
| 12/11/2017 | Criminal 2 | Conference to Review Status | Held as Scheduled | Tucker |
| 03/09/2018 | Criminal 1 | Motion Hearing | Held as Scheduled | Wrenn |
| 05/14/2018 | Criminal 1 | Motion Hearing | Held as Scheduled | Kenton-Walker |

### FINANCIAL DETAILS

| Date | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
|---|---|---|---|---|---|
| 05/13/2004 | Legal counsel fee assessed: $150.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | **Total** | **0.00** | **0.00** | **0.00** | **0.00** |

-29-

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | | INFORMATIONAL DOCKET ENTRIES | | |
|---|---|---|---|---|
| **Date** | **Ref** | **Description** | | **Judge** |
| 04/16/2004 | 1 | Indictment returned | | |
| 05/13/2004 | | Deft arraigned before Court (Fecteau, J) | | |
| 05/13/2004 | | Bail set: $1,000,000.00 surety or $100,000.00 cash with out prejudice | | |
| 05/13/2004 | | Committee for Public Counsel Services appointed, pursuant to Rule 53 | | |
| 05/13/2004 | | RE Offense 1:Plea of not guilty | | |
| 05/13/2004 | | RE Offense 2:Plea of not guilty | | |
| 05/13/2004 | | RE Offense 3:Plea of not guilty | | |
| 05/13/2004 | | RE Offense 4:Plea of not guilty | | |
| 08/24/2004 | 2 | Pre-trial conference report filed --Approved by Court, (Fahey, Justice) | | |
| 08/24/2004 | 3 | Motion by Deft: For Discovery--ALLOWED by Agreement (Fahey, Justice) | | |
| 10/05/2004 | | Hospital records from Emerson Hospital Concord, MA 01742 received #17991 (Counsel may view only - no copies)- Fishman,J. | | |
| 10/07/2004 | | Appointment of Counsel Robert A Delle, pursuant to Rule 53 | | |
| 10/07/2004 | 4 | Motion by Commonwealth: Commonwealth's Response to Defendent's Motion for Discovery | | |
| 10/07/2004 | 5 | Motion by Commonwealth: For Reciprocal Discovery | | |
| 10/07/2004 | 6 | Motion and Affidavit to Withdraw as Counsel ----ALLOWED (Fishman, Justice) | | |
| 09/26/2005 | 7 | Motion by Deft: Motion to Dismiss with Affidavit in Support of | | |
| 10/14/2005 | | Hearing on (P#7 - Motion to Dismiss) held, matter taken under advisement (Kern,J.) | | |
| 10/14/2005 | 8 | Commonwealth files Opposition and Memorandum of Law in Response to the Defendant's Motion to Dismiss Indictment | | |
| 10/17/2005 | | Motion (P#7) Denied Pages 12-13 of the Grand Jury Minutes indicate that the alleged victim was unaware at the time she allowed the defendant to enter her home, that he had a knife. See Commonwealth v Mahar, 430 Mass 643,652 (2000). The evidence presented to the Grand Jury was sufficient. Comm v McCarthy, 365 Mass 160 (1982) (Kern, Justice). Copies mailed to DA and Atty | | |
| 11/16/2005 | 9 | Commonwealth files Joint Pretrial Memorandum -(APPROVED) (McIntyre, J) | | |
| 11/16/2005 | 10 | Commonwealth files Certifcate of Compliance -(APPROVED)(McIntyre, J) | | |
| 11/29/2005 | 11 | Dis-Appearance of Deft's Atty: Robert A Delle | | |
| 12/21/2005 | 12 | Commonwealth files List of Expert Witnesses | | |
| 01/18/2006 | 13 | Commonwealth files Pre-Trial Memorandum | | |
| 02/27/2006 | 14 | Motion by Deft: For Voir Dire Questions and Individual Voir Dire | | |
| 02/27/2006 | 15 | Motion by Deft: In Limine -(DENIED)(Fecteau, J) | | |

-30-

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 02/27/2006 | 16 | Commonwealth files and Defendant files Stipulation Regarding Evidence found in Defendant's House |
| 02/27/2006 | 17 | Motion by Deft: To Sequester -(ALLOWED by Agreement) (Fecteau, J) |
| 02/27/2006 | | Exhibits recieved and are located up in attic wall |
| 02/28/2006 | 18 | Motion by Deft: For Requiring finding of not Guilty at Close of Evidence -(DENIED) (Fecteau, J) |
| 02/28/2006 | 19 | Motion by Deft: For Jury Instructions |
| 02/28/2006 | 20 | Motion by Deft: For Requied Finding of not Guilty at Close of Commonwealth Case -(DENIED After Hearing) (Fecteau, J) |
| 03/01/2006 | | RE Offense 1:Guilty verdict |
| 03/01/2006 | | RE Offense 2:Guilty verdict |
| 03/01/2006 | | RE Offense 3:Guilty verdict (lesser offense) Rape 265/22(a) |
| 03/01/2006 | | RE Offense 4:Guilty verdict |
| 03/03/2006 | | Defendant sentenced to Offense #1) Twenty(20) to Twenty Five(25) years Cedar Junction/ Offense #2 Twenty(20) to Twenty Five years Cedar Junction concurrent with 04-666(1)/ Offense #3 Eighteen(18) to Twenty(20) years Cedar Junction concurrent with 04-666(1)/ Offense #4 Probation Five(5) years from + after sentence imposed on 04-666(1) (Fecteau, Justice ) |
| 03/03/2006 | 21 | By Defendant Counsel to Withdraw -)(ALLOWED with exception of any representation before thw Superior Court Appellate Division (Fecteau, J) |
| 03/03/2006 | 22 | Motion by Deft: For Appointment of Appellate Counsel (Allowed) (Fecteau, J) |
| 03/03/2006 | 23 | Motion by Deft: For Judgement not withstanding the Verdict (Denied) (Fecteau, J) |
| 03/03/2006 | 24 | Notified of right of appeal under Rule 64 |
| 03/03/2006 | | Defendant is subject to the following special conditions: Mental Health Evaluation Treatment, Drug and Alcohol Evaluation Treament, Sex Offender Treatment at DIrection of P.D. Stay Away + No Contact with Victim or Witness (Fecteau, J) |
| 03/03/2006 | | Sentence credit given as per 279:33A: 767 days (Fecteau, J) |
| 03/03/2006 | | Sentence stayed until 3/6/2006 (Fecteau, J) |
| 03/03/2006 | | Victim-witness fee assessed: $90.00 (Fecteau, J) |
| 03/03/2006 | | Probation supervision fee assessed: $65.00 (Fecteau, J) |
| 03/03/2006 | 25 | NOTICE of APPEAL FILED by Steven M Putnam |
| 03/06/2006 | 26 | Court Reporter Pender, Claire is hereby notified to prepare one copy of the transcript of the Non Evidentiary Counsel of 10/7/04 Before Judge Fishman |
| 03/06/2006 | 27 | Court Reporter Kaye, Judith is hereby notified to prepare one copy of the transcript of the Evidentiary Dismiss of 10/14/2005, Before Judge Kern. |

-31-

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| Date | No. | Description |
|---|---|---|
| 03/06/2006 | 28 | Court Reporter Witaszek, Jennifer is hereby notified to prepare one copy of the transcript of the Trial of 2/27/06, 2/28/2006, 3/1/06, and 3/3/06 Before Judge Fecteau |
| 03/10/2006 | 29 | Notice of appeal from sentence to Cedar Junction MCI (Walpole) filed by Steven M Putnam |
| 03/10/2006 | 30 | Letter transmitted to the Appellate Division. All parties notified 3/10/2006 |
| 03/20/2006 | 31 | Motion by Deft: For Appointment of Appellate Counsel with Affidavit of Indigency |
| 03/20/2006 | 32 | NOTICE of APPEAL FILED by Steven M Putnam (See Paper #25) |
| 03/20/2006 | 33 | Motion by Deft: For Leave to File Late Appeal from Sentence with Affidavit in Support of |
| 03/20/2006 | | Motion (P#31) Previously Allowed see Docket Entry of 3/3/06 on P#22 (Fecteau, J). Copies mailed 3/21/2006 to defendant |
| 03/20/2006 | 34 | Regarding P#33 - Notice of Sentence Appeal has already been docketed. See entry of 3/10/06 on P#.29 (Fecteau, J) |
| 03/23/2006 | | Victim-witness fee paid as assessed $90.00 |
| 03/27/2006 | 35 | Motion by Deft: For Appointment of Appellate Counsel with Affidavit of Indigency |
| 03/27/2006 | 36 | Motion by Deft: To Waive Fee's with Affidavit of Indigency |
| 03/28/2006 | | Regarding P#35 - No Action Necessary as it was Previously Allowed (Fecteau, J) |
| 03/28/2006 | | Motion (P#36) Denied for Insufficient Evidence of Hardship (Fecteau, J). Copies mailed |
| 04/04/2006 | 37 | Motion by Deft: To Waive Fees (Victim Witness & Appointment of Counsel) |
| 04/06/2006 | | Motion (P#37) Denied for insufficient cause stated, since indigency is not sufficient to support a finding of severe hardship (Fecteau, Justice). Copies mailed to defendant |
| 04/11/2006 | 38 | Motion by Deft: For Free Transcripts of Trial for Appeal |
| 04/11/2006 | | Regarding P#38 Copies of transcripts will be provided the appellate counsel of the defendant without a charge, once he or she is appointed (Fecteau, J) |
| 05/02/2006 | 31 | Appointment of Counsel Edward B Fogarty, pursuant to Rule 53 (For Direct Appeal) |
| 05/02/2006 | 39 | Defendant files motion to revise and revoke sentence with affidavit in support of |
| 05/03/2006 | | Copy of Motion to Revise and Revoke sent to Judge Fecteau in Springfield (Hampden Superior ) |
| 05/23/2006 | 40 | Motion by Deft: Motion to Dismiss Appointed Counsel and to Appoint New Counsel |

-32-

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 05/30/2006 | | Copy of P#40 Sent to Judge Fecteau in Springfield (Hampden Superior Court) |
| 06/09/2006 | | Motion (P#40) The issue involved in a sentence appeal, as in a motion to revise and revoke a sentence are narrow and discreet issues and that trial counsel is in the best position to represent the defendant at both proceedings. I decline to appoint other counsel for these hearings; if any (Fecteau, Justice). Copies mailed to defendant and atty |
| 07/07/2006 | | Transcript of testimony received One(1) volume from court reporter, Pender, Claire of Motion to Withdraw on October 7, 2004 |
| 07/31/2006 | | Transcript of testimony received One(1) volume of Transcript of Proceedings on October 14, 2005 from court reporter, Kaye, Judith |
| 10/19/2006 | 41 | MOTION by Deft: For Reconsideration of Appointment of Counsel for Sentence Appeal -(ALLOWED)(Agnes, J) |
| 12/01/2006 | 42 | Committee for Public Counsel Services appointed, pursuant to Rule 53 -(David Keighley -Direct Appeal |
| 12/05/2006 | 43 | Appearance of Deft's Atty: David Keighley |
| 01/25/2007 | 44 | MOTION by Deft: For all Crime Scene Photos Relating to Case |
| 04/23/2007 | | Transcript of testimony received One volume of each 2/27/2006 Jury Trial, 2/28/06 Jury Trial, 3/1/06 Jury Trial, 3/3/06 Sentencing from court reporter, Witaszek Jennifer |
| 06/14/2007 | 45 | Statement of the case on Appeal (Cover Sheet) |
| 06/14/2007 | 46 | Notice of assembly of record; mailed to Appeals Court per Rule 9(d) |
| 06/14/2007 | | Notice of completion of assembly of record sent to clerk of Appeals Court and attorneys for the Commonwealth and defendant. |
| 06/21/2007 | 47 | Re: No.2007-P-0958. Notice of Entry. In accordance with Massachusetts Rule of Appellate Procedure 10(a)(3), please note that the above-referenced case was entered in this Court on 6/19/07 |
| 07/06/2007 | 48 | Appointment of Counsel Julie Ann Boyden, pursuant to Rule 53 (For Direct Appeal) |
| 01/14/2008 | 49 | Re: No 2007-P-0958 - Notice of Docket Entry - Please take note that with respect to the Motion to stay the proceedings, filed by Steven M. Putnam, On January 10, 2008 the following order was entered on the docket of the above-reference case: RE#9: Appellate is granted leave to file motion for new trial in the trial court. Appellate proceedings stayed to 2/11/08. Status report to b filed on or before that date supported by affidavit of counsel that a motion has been filed in the trial court. |
| 07/02/2008 | 50 | Sentence Appeal: Withdrawn by Steven M Putnam |
| 07/29/2008 | 51 | Appearance of Deft's Atty: Debra S Krupp |

-33-

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 09/03/2008 | 52 | Re: No. 2007-P-0958- Notice of Entry -Please take note that, with respect to the Motion to reinstate the appeal filed by Steve M Putnam(Paper #12) on September 2, 2008, the following order was entered on the docket of the above-referenced case; Revise Action Re#12: the motion to reinstated appeal is allowed and appeal is reinstated this date. Proceeding stayed to 9/30/08. Status report to be filed on or before that date as to how defendant wishes to proceed. (Cypher, Kantrowitz & Wolohjian, JJ) |
| 01/13/2009 | | Copy of P#39 sent to Atty per request |
| 12/09/2009 | 53 | Rescript received from Appeals Court; judgment AFFIRMED |
| 02/02/2010 | 54 | Defendant files MOTION to revise and revoke sentence with affidavit in support of (doesn't request hearing yet) |
| 03/16/2010 | 55 | Appearance of Deft's Atty: David Rotondo |
| 06/06/2011 | 56 | MOTION by Deft: To Preserve Evidence of Official Records and Trial Exhibits (Sent to Judge Agnes) |
| 06/07/2011 | 57 | Re: P#56 - The office of the DA shall have until June 24, 2011 to respond in writing if opposes the motion. Meanwhile any trial exhibits in this case shall be returned by the Clerk (Agnes, J) |
| 09/14/2011 | 58 | Defendant's motion for new trial (Sent to Lemire, J) |
| 09/16/2011 | | MOTION (P#58) This motion is assigned to Judge Kenton-Walker (James R. Lemire, Justice). |
| 09/20/2011 | | MOTION (P#58) Commonwealth is given 30 days to file any response (Kenton-Walker, Justice). Copies mailed 9/21/2011 |
| 10/21/2011 | 59 | Commonwealth files Memorandum in Opposition to Defendant's Motion for a New Trial |
| 11/22/2011 | | MOTION (P#58) Denied (Janet Kenton-Walker, Justice). Copies mailed |
| 11/22/2011 | 60 | MEMORANDUM OF DECISION & ORDER ON DEFENDANT'S MOTION FOR NEW TRIAL: For the foregoing reasons, the defendant's Motion for New Trial, in all respects, DENIED 11/22/2011. (Janet Kenton-Walker, Justice) |
| 12/22/2011 | 61 | NOTICE of MOTION APPEAL FILED by Steven M Putnam |
| 01/20/2012 | 62 | Statement of the case on Appeal (Cover Sheet) |
| 01/20/2012 | 63 | Notice of assembly of record; mailed to Appeals Court per Rule 9(d) |
| 01/20/2012 | | Notice of completion of assembly of record sent to clerk of Appeals Court and attorneys for the Commonwealth and defendant. |
| 01/26/2012 | 64 | Notice of Entry of appeal received from the Appeals Court |
| 05/13/2013 | 65 | Rescript received from Appeals Court; judgment AFFIRMED Order Denying Motion for New Trial Affirmed (Stanton, Clerk) |
| 02/07/2014 | 67 | MOTION by Deft: (pro-se)Pursuant to GL 278A sec 3: Post Conviction Access to Forensic and Scientific Analysis with "facts" and GJ Minutes in support of (sent to Judge Lemire 3/7/14) |
| 02/28/2014 | 66 | MOTION by Deft: (pro-se) for New Trial ..with Memorandum in Support of |

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 03/07/2014 | 68 | ORDERED: ORDER in RE:(p#66) Defendant's Motion for New Trial- the Defendant, Steven Putnam, has filed a Motion for a new trial under Mass. Rules of Criminal Procedure 30(b). The District Attorney shall file any response in writing on or before April 11 , 2014. Because the trial Judge is not available to hear this matter, the case is assigned to Judge David Ricciardone for any action he may deem appropriate. (Lemire, J, (RAJ)) copies mailed to DA and Defendant 3/10/14 |
| 03/14/2014 | | ORDERED:(RE:p#67) Commonwealth shall have until 4/15/14 to file any opposition (James R. Lemire, RAJ) copies mailed 3/14/15 |
| 04/04/2014 | 69 | Commonwealth files Memorandum in Opposition to Defendant's Second Motion for a New Trial |
| 04/04/2014 | 70 | Commonwealth files Memorandum in Opposition to Defendant's Post Conviction Motion for Scientific/Forensic Analysis |
| 04/24/2014 | | MOTION (P#66) Denied. The fact that the defendant ignores the evidence of the digital penetration presented to the jury (trial transcript pp. 1-196, 1-216-219) does not negate its existence. There was no injustice. Accordingly, this motion is DENIED without a hearing (Ricciardone, J). Copies mailed to DA & Atty |
| 04/24/2014 | 71 | MEMORANDUM OF DECISION AND ORDER ON MOTION FOR FORENSIC AND SCIENTIFIC ANALYSIS (P. #67): Therefore, this motion does not meet the requirements of the statute and is DISMISSED without a hearing G/L/c 278A 3(e)(James R. Lemire, RAJ) copies mailed to DA & Defendant |
| 05/09/2014 | 72 | NOTICE of Motion APPEAL FILED by Steven M Putnam |
| 05/09/2014 | 73 | Statement of the case on Appeal (Cover Sheet) |
| 05/09/2014 | 74 | Notice of assembly of record; mailed to Appeals Court per Rule 9(d) |
| 05/09/2014 | | Notice of completion of assembly of record sent to clerk of Appeals Court and attorneys for the Commonwealth and defendant. |
| 05/23/2014 | 75 | Notice of Entry of appeal received from the Appeals Court |
| 10/02/2015 | 76 | Defendant 's Motion for New Trial and Affidavit (Given to Judge Tucker) |
| 10/07/2015 | 77 | ORDER: in re: Deft's Motion for New Trial Because the trial judge is not available to hear this matter, the case is assigned to Judge Shannon Frison for any action she may deem appropriate. (Case given to Judge Frison) — Tucker |
| 12/11/2015 | | Endorsement on Motion for New Trial, (#76.0): DENIED After review, this motion is DENIED; See accompanying Memorandum of Decision. — Frison |
| 12/11/2015 | | The following form was generated: A Clerk's Notice was generated and sent to: Defendant: Steven Putnam Attorney: Donna Marie Haran, Esq. Holding Institution: MCI - Cedar Junction (at Walpole) |

-35-

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
Docket Report

| Date | No. | Description | |
|---|---|---|---|
| 12/11/2015 | 78 | MEMORANDUM & ORDER:<br><br>For the foregoing reasons, it is hereby ORDERED that the defendant's Motion for New Trial is DENIED. | Frison |
| 12/28/2015 | 79 | Notice of appeal filed (Motion for New Trial, Judge Frison)<br><br>Applies To: Putnam, Steven (Defendant) | |
| 04/06/2016 | 80 | Statement of Case Appeal filed: | |
| 04/06/2016 | 81 | Appeal: notice of assembly of record | |
| 04/11/2016 | 82 | Notice of Entry of appeal received from the Appeals Court | |
| 05/18/2016 | 83 | Rescript received from Appeals Court; judgment AFFIRMED Order denying the motion for new trial affirmed.. | |
| 07/25/2016 | 84 | Defendant 's  Motion for Post  Conviction Access to Forensic and Scientific Analysis; Affidavit in Support | |
| 08/02/2016 | 85 | ORDER: re: Deft's Motion for Post-Conviction Access to Forensic and Scientific Analysis<br>...Becase the trial judge is not available to hear this matter, the case is assigned to Judge Richard T. Tucker for any action he may deem appropriate. | Tucker |
| 08/02/2016 | 86 | ORDER: re: Motion for Post  Conviction Access to Forensic and Scientific Analysis<br>...if the Commonwealth wishes to respond to this motion addressing the sole issue of whether the motion meets the requirements under G. L. c.278A, s3(e), the Commonwealth shall do so within 10 days of this Order. If the Commonwealth does not intend to file a response at this stage, Asst. Clerk, Gail Dempsey should be notified.<br><br>So Ordered. | Tucker . |
| 08/02/2016 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant: Steven Putnam<br>Attorney: Donna Marie Haran, Esq.<br>Holding Institution:  MCI - Cedar Junction (at Walpole) | |
| 09/06/2016 | 87 | ORDER: on Defendant's Motion for Post-Conviction Access to Forensic and Scientific Analysis<br>Commonwealth has 60 days to respond. | Tucker |
| 09/08/2016 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant: Steven Putnam<br>Attorney: Donna Marie Haran, Esq.<br>Holding Institution:  MCI - Cedar Junction (at Walpole) | |
| 10/05/2016 | 88 | Opposition to Defendant's Motion for Post-Conviction Forensic Analysis (p#84) filed by Commonwealth | |
| 10/14/2016 | 89 | Pro Se Defendant 's  Motion for Appointment of Counsel with Affidavit of Indigency | |

-36-

| Date | Entry | |
|---|---|---|
| 10/17/2016 | The following form was generated:<br><br>Notice to Appear<br>Sent On: 10/17/2016 08:36:36 | |
| 10/17/2016 | Habeas Corpus for defendant issued to MCI - Norfolk returnable for 11/18/2016 09:00 AM Motion Hearing. | |
| 10/17/2016 | Endorsement on Motion for Post Conviction Access to Forensic and Scientific Analysis, (#84.0):  Other action taken<br>The Commonwealth having filed its written response, a hearing under G.L. 278A, §6 shall be held on November 18, 2016 in Courtroom 19 at 9:00AM.<br><br>(endorsement written on Order, p#87) | Tucker |
| 10/17/2016 | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant: Steven Putnam<br>Attorney:  Donna Marie Haran, Esq.<br>Holding Institution:  MCI - Norfolk | |
| 10/18/2016 | Endorsement on Motion for Appointment of Counsel, (#89.0):  Other action taken<br>This motion shall be referred to CPCS for its review. | Tucker |
| 11/08/2016 | Event Result:<br>The following event: Motion Hearing scheduled for 11/18/2016 09:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: By Court prior to date | Tucker |
| 11/08/2016 | The following form was generated:<br><br>Notice to Appear<br>Sent On: 11/08/2016 09:36:57 | |
| 11/08/2016 | Habeas Corpus for defendant issued to MCI - Norfolk returnable for 11/21/2016 11:00 AM Motion Hearing.  Please cancel habe scheduled for 11/18/16 | |
| 11/08/2016 | The following form was generated:<br><br>Notice to Appear<br>Sent On: 11/08/2016 09:40:43 | |
| 11/21/2016 | Event Result:<br>The following event: Motion Hearing scheduled for 11/21/2016 11:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Transferred to another session | Tucker |
| 11/21/2016 | The following form was generated:<br><br>Notice to Appear<br>Sent On: 11/21/2016 11:52:21 | |

-37-

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| Date | | | |
|---|---|---|---|
| 11/21/2016 | | Event Result:<br>The following event: Motion Hearing scheduled for 11/21/2016 09:00 AM has been resulted as follows:<br>Result: Held as Scheduled<br>Court Reporter Susan Garvin | Tucker |
| 11/21/2016 | | Habeas Corpus for defendant issued to MCI - Norfolk returnable for 12/16/2016 09:00 AM Conference to Review Status. | |
| 12/16/2016 | | Event Result:<br>The following event: Conference to Review Status scheduled for 12/16/2016 09:00 AM has been resulted as follows:<br>Result: Held as Scheduled | Tucker |
| 12/16/2016 | 90 | Defendant 's   Supplemental Motion for post-conviction testing | Tucker |
| 01/17/2017 | 91 | General correspondence regarding Letter from CPCS<br>-After reviewing the Defendant's motion, his case, and other related materials, CPCS has decided not to appoint counsel for litigation under Chapter 278A in the Defendant's matter. | |
| 02/22/2017 | | Event Result:<br>The following event: Conference to Review Status scheduled for 02/22/2017 09:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: By Court prior to date | Tucker |
| 02/23/2017 | | Event Result:<br>The following event: Conference to Review Status scheduled for 02/24/2017 09:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: By Court prior to date | Tucker |
| 02/24/2017 | | Event Result:<br>The following event: Conference to Review Status scheduled for 02/24/2017 09:00 AM has been resulted as follows:<br>Result: Not Held<br>Reason: Defendant not transported to event | Tucker |
| 02/24/2017 | | Habeas Corpus for defendant issued to MCI - Norfolk returnable for 03/10/2017 10:00 AM Conference to Review Status. | |
| 03/10/2017 | | Event Result:<br>The following event: Conference to Review Status scheduled for 03/10/2017 10:00 AM has been resulted as follows:<br>Result: Held as Scheduled | Tucker |
| 03/10/2017 | | Habeas Corpus for defendant issued to MCI - Norfolk returnable for 04/27/2017 10:00 AM Conference to Review Status. | |
| 04/24/2017 | 92 | Rescript received from Appeals Court; judgment REVERSED The order denying the motion for a new trial is vacated, and the motion is to be treated as not acted upon and awaiting determination by the Superior Court.<br>-Copy of rescript sent to Judge Tucker on 4/24/17 | |

-38-

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| Date | No. | Entry | |
|---|---|---|---|
| 04/27/2017 | | Event Result:<br>The following event: Conference to Review Status scheduled for 04/27/2017<br>10:00 AM has been resulted as follows:<br>Result: Not Held<br>Reason: Transferred to another session | Tucker |
| 04/27/2017 | | Event Result:<br>The following event: Conference to Review Status scheduled for 04/27/2017<br>10:00 AM has been resulted as follows:<br>Result: Held as Scheduled | Tucker |
| 04/27/2017 | | Habeas Corpus for defendant issued to MCI - Norfolk returnable for<br>06/09/2017 09:00 AM Conference to Review Status. | |
| 05/11/2017 | 93 | Pro Se Defendant 's   Motion for Post-Conviction relief pursuant to Superior<br>Court Rule 61A | |
| 05/26/2017 | 94 | Pro Se Defendant 's   Motion for the Appointment of Counsel, or, in the<br>alternative to Compel the Commonwealth to Test the Biologicals Pursuant to<br>Chapter 278A | |
| 06/09/2017 | | Event Result:<br>The following event: Conference to Review Status scheduled for 06/09/2017<br>09:00 AM has been resulted as follows:<br>Result: Held as Scheduled<br>FTR Room 19 | Tucker |
| 06/09/2017 | | Habeas Corpus for defendant issued to MCI - Norfolk returnable for<br>07/07/2017 09:00 AM Conference to Review Status. | |
| 06/13/2017 | 95 | ORDER: Defendant's Motion for New Trial<br>It is hereby ORDERED that the Defendant's motion for new trial is DENIED | Frison |
| 06/13/2017 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant: Steven Putnam<br>Attorney: Donna Marie Haran, Esq. | |
| 06/13/2017 | 96 | Pro Se Defendant 's   Motion to Revise and Revoke | |
| 06/13/2017 | 96.1 | Affidavit filed by Defendant Steven Putnam in support of<br>Motion to Revise and Revoke | |
| 06/28/2017 | 97 | Notice of appeal filed.<br>Motion for New Trial DENIED (Frison, J)<br><br>Applies To: Putnam, Steven (Defendant) | |
| 07/07/2017 | | Event Result:<br>The following event: Conference to Review Status scheduled for 07/07/2017<br>09:00 AM has been resulted as follows:<br>Result: Held as Scheduled<br>FTR Room 10 | Tucker |
| 07/07/2017 | | Habeas Corpus for defendant issued to MCI - Norfolk returnable for<br>08/11/2017 09:00 AM Conference to Review Status. | |

-39-

CRTR2709-CR  COMMONWEALTH OF MASSACHUSETTS
WORCESTER COUNTY
Docket Report

| | | | |
|---|---|---|---|
| 08/10/2017 | | Event Result:<br>The following event: Conference to Review Status scheduled for 08/11/2017<br>09:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Court Order | Tucker |
| 09/25/2017 | | Attorney appearance<br>On this date Merritt Spencer Schnipper, Esq. added as Appointed - Indigent<br>Defendant for Defendant Steven Putnam<br>Appointment made for the purpose of Motion for a new Trial by Judge Hon.<br>Janet Kenton-Walker. | |
| 12/11/2017 | | Event Result:<br>Judge: Tucker, Hon. Richard T<br>The following event: Conference to Review Status scheduled for 12/11/2017<br>09:00 AM has been resulted as follows:<br>Result: Held as Scheduled<br>Staff Appeared:<br>Court Reporter    Witaszek, Jennifer M | Tucker |
| 12/11/2017 | 98 | Habeas Corpus for defendant issued to MCI - Norfolk returnable for<br>03/09/2018 09:00 AM Motion Hearing. | |
| 02/05/2018 | 99 | Defendant Merritt Spencer Schnipper, Esq.'s   Motion to Stay and Status<br>Report | |
| 03/09/2018 | | Event Result:<br>Judge: Wrenn, Hon. Daniel M<br>The following event: Motion Hearing scheduled for 03/09/2018 09:00 AM has<br>been resulted as follows:<br>Result: Held as Scheduled | Wrenn |
| 03/09/2018 | | The following form was generated:<br><br>Notice to Appear<br>Sent On: 03/09/2018 11:33:07 | |
| 03/09/2018 | 100 | Habeas Corpus for defendant issued to MCI - Norfolk returnable for<br>05/14/2018 09:00 AM Motion Hearing.<br><br>Judge: Wrenn, Hon. Daniel M | Wrenn |
| 03/09/2018 | | Endorsement on Motion to Stay Proceedings and Status Report, (#99.0):<br>DENIED<br>without prejudice<br><br>Judge: Wrenn, Hon. Daniel M | Wrenn |
| 04/25/2018 | 101 | Defendant 's  Motion for Discovery pursuant to G.L. c 278, §3(c) | |
| 04/25/2018 | 102 | Steven Putnam's  Memorandum in support of<br>Previously Filed Pro-Se Motion for Forensic Testing pursuant to G.L. c 278A<br>(Supplemental) | |
| 05/07/2018 | 103 | Defendant 's  Motion to Withdraw Habeas Corpus (JKW) | |
| 05/07/2018 | 103.1 | Affidavit filed by Defendant Steven Putnam in support of<br>Motion to Withdraw Habeas Corpus | |

-40-

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | | | |
|---|---|---|---|
| 05/08/2018 | | Endorsement on Motion to Withdraw Habeas Corpus Issued to MCI Norfolk, (#103.0):  ALLOWED<br><br>Judge: Kenton-Walker, Hon. Janet | Kenton-Walker |
| 05/10/2018 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Attorney:  Merritt Spencer Schnipper, Esq.<br>Attorney:  Donna Marie Haran, Esq. | |
| 05/11/2018 | 104 | Commonwealth 's  Response to Defendant's Supplemental Memorandum in Support of His Previous Pro-Se Motion for Post-Conviction Forensic Testing and Motion for Discovery | |
| 05/14/2018 | | Matter taken under advisement<br>Judge: Kenton-Walker, Hon. Janet<br>The following event: Motion Hearing scheduled for 05/14/2018 09:00 AM has been resulted as follows:<br>Result: Held - Under advisement | Kenton-Walker |
| 05/29/2018 | | Endorsement on Motion for Post-Conviction Access to Forensic and Scientific Analysis, (#84.0):  DENIED<br>After thorough review of the respective pleadings, the history of this case - particularly post-conviction motions and decisions- and following a hearing and review of the relevant law, the defendant's motion is DENIED. The defendant's motion and affidavits do not meet the requirements of c. 278A, §3(b)(4) in that defendant has not met his burden to show whether any test results could be material to the question of identity of the perpetrator. Here the issue is not identity, but whether a crime occurred. Defendant is not entitled to relief. For these reasons and as stated in Commonwealth's memo the defendant's motion is DENIED.<br><br>Judge: Kenton-Walker, Hon. Janet | Kenton-Walker |
| 05/29/2018 | 105 | Pro Se Defendant 's   Motion for Finding of Fact and Rulings of Law (re: Motion to Revise and Revoke 6/7/17; p#)<br><br>Judge: Kenton-Walker, Hon. Janet | Kenton-Walker |
| 05/30/2018 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Attorney: Merritt Spencer Schnipper, Esq.<br>Holding Institution: MCI - Norfolk | |
| 05/31/2018 | | Endorsement on Motion for Findings of Fact and Rulings of Law, (#105.0): DENIED<br>as the motion was not timely filed. See pleading #96<br><br>Judge: Kenton-Walker, Hon. Janet | Kenton-Walker |
| 05/31/2018 | | Endorsement on Motion to Revise and Revoke, (#96.0):  DENIED<br>This motion is not timely filed.<br><br>Judge: Kenton-Walker, Hon. Janet | Kenton-Walker |

-41-

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 06/01/2018 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant: Steven Putnam |
| 06/01/2018 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant: Steven Putnam |
| 06/04/2018 | 106 | Notice of appeal filed.<br><br>On the Court's May 29, 2018 Order Denying his Motion for a Forensic Testing<br>Pursuant to G.L. c278 3 May 31, 2018<br><br>Applies To: Putnam, Steven (Defendant) |
| 06/07/2018 | 107 | Appeal: Statement of the Case on Appeal (Cover Sheet). |
| 06/07/2018 | | Notice to Clerk of the Appeals Court of Assembly of Record |
| 06/07/2018 | 108 | Appeal: notice of assembly of record sent to Counsel<br><br>Applies To: Putnam, Steven (Defendant) |
| 06/18/2018 | 109 | Defendant 's  Motion for Reconsideration with Supplemental Motion to Revise<br>and Revoke Sentence (Judge Kenton-Walker) |
| 06/25/2018 | | Endorsement on Motion for Reconsideration with Supplemental Motion to<br>Revise and Revoke, (#109.0):  Other action taken<br>Commonwealth has 60 days to file a responsive pleading.<br><br>Judge: Kenton-Walker, Hon. Janet | Kenton-Walker |
| 06/26/2018 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Attorney:  Merritt Spencer Schnipper, Esq.<br>Attorney:  Donna Marie Haran, Esq. |
| 07/09/2018 | 110 | Opposition to Defendant's Motion for Reconsideration with Supplemental<br>Motion to Revise and Revoke filed by Commonwealthre p#109 |
| 07/11/2018 | | Endorsement on Motion for Reconsideration with Supplemental Motion to<br>Revise and Revoke, (#109.0):  DENIED<br>After review of the record in this case, the defendant's motion is DENIED for<br>the reasons stated in the Commonwealth's opposition.<br><br>Judge: Kenton-Walker, Hon. Janet | Kenton-Walker |
| 07/13/2018 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant: Steven Putnam |
| 09/17/2018 | 111 | Notice of docket entry received from Appeals Court<br>Re: no. 2018-P-844<br>The Supreme Judicial Court has allowed an Application for Direct Appellate<br>Review of the above-referenced matter. Case transferred to the Supreme<br>Judicial Court |
| 09/19/2018 | 112 | Appeal entered in Supreme Judicial Court on 09/17/2018 docket number Re:<br>No SJC-12596 |

-42-

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 05/09/2019 | 113 | Rescript received from Supreme Judicial Court; judgment REVERSED The order denying the defendant's chapter 278A motion is reversed, and this case is remanded to the Superior Court for further proceeding consistent with this opinion and the reasoning in Commonwealth v William published today. 4/9/19 (Kenneally, Clerk) |
| 05/28/2019 | 114 | Defendant 's Motion for Discovery (Renewed) pursuant to c.278A §3(c) (JKW) |
| 06/25/2019 | | Endorsement on Motion for Discovery (Renewed) pursuant to G.L. c278, §3(c), (#114.0):  No Action Taken    Kenton-Walker   It does not appear that counsel has served the Commonwealth with this renewed motion. No action taken until service made. |
| 06/26/2019 | | The following form was generated: A Clerk's Notice was generated and sent to: Attorney:  Merritt Spencer Schnipper, Esq. Prosecutor:  Commonwealth |
| 07/08/2019 | 115 | Defendant 's Certificate of Service of Renewed Motion for Discovery pursuant to GL c278, §3(c) (JKW) |
| 07/01/2020 | 116 | General correspondence regarding Pro-Se Defendant Requested Copies of P#89 & P#91 Requested Copies sent to Defendant at MCI-Norfolk |
| 09/11/2020 | 117 | Pro Se Defendant 's Motion for the transcript of the June 9, 2017 and July 7, 2017 hearings *given to clerk in 1st session* |
| 09/15/2020 | 118 | Affidavit of Steven Putnam Affidavit of indigency *document impounded* |
| 12/02/2020 | | Docket Note: Docket sheet mailed to defendant 12/2/2020 |
| 02/08/2021 | 119 | Pro Se Defendant 's Motion for Contempt of Court (Verified) *Given to Clerk ML on 02/11/21 |
| 02/12/2021 | | Endorsement on Motion for Contempt of Court (Verified), (#119.0):  Other    Wrenn   action taken Commonwealth shall have 60 days to respond. |
| 02/12/2021 | | The following form was generated: A Clerk's Notice was generated and sent to: Prosecutor, Attorney:  Donna Marie Haran, Esq. District Attorney's Office 225 Main St, Worcester, MA 01608 |
| 02/12/2021 | | The following form was generated: A Clerk's Notice was generated and sent to: Defendant:  Steven Putnam MCI Norfolk P.O. Box 43, Norfolk, MA 02056 |
| 03/24/2021 | 120 | General correspondence regarding response from Attorney Donna Marie Haran from Worcester DA's office responding to "defendant's pro-se verified motion for contempt of court" |
| 03/29/2021 | 121 | Pro Se Defendant 's Motion to Revise and Revoke Sentence |

-43-

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 03/29/2021 | 121.1 | Affidavit filed by Defendant Steven Putnam in support of Motion to Revise and Revoke Sentence |
| 03/31/2021 | | Endorsement on Motion to Revoke and Revise Sentence, (#121.0): DENIED    Reardon<br>DENIED, this motion is untimely. CPCS is directed to screen this matter for appointment of an attorney to follow-up based on the ruling in Comm v. Putnam No. SJC - 12596 |
| 04/01/2021 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant:  Steven Putnam MCI Norfolk P.O. Box 43, Norfolk, MA 02056<br>Prosecutor, Attorney:  Donna Marie Haran, Esq. District Attorney's Office 225 Main St, Worcester, MA 01608 |
| 04/16/2021 | 122 | Pro Se Defendant 's Motion for reconsideration (verified) |
| 04/26/2021 | | Endorsement on Motion for reconsideration , (#122.0): DENIED    Reardon<br>This motion is DENIED. It presents no significant new information. The defendant reliance on Commonwealth vs Fenton F 442 Mass (2004) is inapplicable, as his Rule 29 motion has repeatedly been Denied as untimely. As shown by the defendant's Exhibit A & B. The previous order for CPCS to screen the c278A issues, pursuant to the ruling in Commonwealth vs Putnam 481 Mass 1045(2019) remains in effect.<br><br>Judge: Reardon, Jr., Hon. James G |
| 04/26/2021 | 123 | Defendant 's Motion for the court to compel the Commonwealth to Conduct Forensic Testing.<br>exhibits appended to pleading.<br><br>Sent to Judge Reardon |
| 04/27/2021 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant, Attorney:  Merritt Spencer Schnipper, Esq. Schnipper Hennessy PC 25 Bank Row Suite 2S, Greenfield, MA 01301<br>Prosecutor, Attorney:  Donna Marie Haran, Esq. District Attorney's Office 225 Main St, Worcester, MA 01608<br>Holding Institution:  MCI - Norfolk 2 Clark Street PO Box 43, Norfolk, MA 02056 |
| 04/27/2021 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant:  Steven Putnam MCI Norfolk P.O. Box 43, Norfolk, MA 02056<br>Holding Institution:  MCI - Norfolk 2 Clark Street PO Box 43, Norfolk, MA 02056 |
| 05/03/2021 | | Endorsement on , (#123.0):    Reardon<br>Defendant 's Motion for the court to compel the Commonwealth to Conduct Forensic Testing.<br>exhibits appended to pleading.<br><br>The Commonwealth shall have 30 days to respond |

-44-

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 05/04/2021 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant, Attorney:  Merritt Spencer Schnipper, Esq. Schnipper Hennessy<br>PC 25 Bank Row Suite 2S, Greenfield, MA 01301<br>Prosecutor, Attorney:  Donna Marie Haran, Esq. District Attorney's Office 225<br>Main St, Worcester, MA 01608 |
| 05/24/2021 | 124 | Notice of appeal filed.<br><br>Applies To: Putnam, Steven (Defendant) |
| 05/26/2021 | 125 | Defendant 's Motion to Respond to Defendant's Motion for Court to Compel<br>the Commonwealth to Conduct Forensic Testing after Counsel has been<br>Appointed, and has filed an amended or supplemental motion or decline to do<br>so<br>Sent ton Judge Reardon |
| 05/26/2021 | | Endorsement on Motion to Commonwealth's Motion to Respond to<br>Defendant's Motion for Court to Compel the Commonwealth to Conduct<br>Forensic Testing after Counsel has been Appointed , and has filed an<br>amended or supplemental motion or decline to do so, (#125.0):  ALLOWED _____ | Reardon |
| 05/28/2021 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant:  Steven Putnam MCI Norfolk P.O. Box 43, Norfolk, MA 02056<br>Defendant, Attorney:  Merritt Spencer Schnipper, Esq. Schnipper Hennessy<br>PC 25 Bank Row Suite 2S, Greenfield, MA 01301<br>Holding Institution:  MCI - Norfolk 2 Clark Street PO Box 43, Norfolk, MA<br>02056 |
| 05/28/2021 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant:  Steven Putnam MCI Norfolk P.O. Box 43, Norfolk, MA 02056<br>Defendant, Attorney:  Merritt Spencer Schnipper, Esq. Schnipper Hennessy<br>PC 25 Bank Row Suite 2S, Greenfield, MA 01301<br>Prosecutor, Attorney:  Donna Marie Haran, Esq. District Attorney's Office 225<br>Main St, Worcester, MA 01608<br>Holding Institution:  MCI - Norfolk 2 Clark Street PO Box 43, Norfolk, MA<br>02056 |
| 05/28/2021 | | The following form was generated:<br>A Clerk's Notice was generated and sent to:<br>Defendant:  Steven Putnam MCI Norfolk P.O. Box 43, Norfolk, MA 02056<br>Defendant, Attorney:  Merritt Spencer Schnipper, Esq. Schnipper Hennessy<br>PC 25 Bank Row Suite 2S, Greenfield, MA 01301<br>Prosecutor, Attorney:  Donna Marie Haran, Esq. District Attorney's Office 225<br>Main St, Worcester, MA 01608<br>Holding Institution:  MCI - Norfolk 2 Clark Street PO Box 43, Norfolk, MA<br>02056 |
| 06/07/2021 | 126 | Pro Se Defendant 's Objection to CPCS Letter<br>*Exhibits appended to P#126 (A,B &C) filed in case |

-45-

Exhibit H

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

**WORCESTER SUPERIOR COURT
DOCKET NO. 0485CR00666**

## COMMONWEALTH OF MASSACHUSETTS

v.

### STEVEN M. PUTNAM

### COMMONWEALTH'S OPPOSITION TO DEFENDANT'S MOTION FOR POST-CONVICTION FORENSIC ANALYSIS

The Commonwealth of Massachusetts does hereby oppose the defendant's motion for post-conviction forensic analysis. As grounds therefor, the Commonwealth states that the defendant has not demonstrated by a preponderance of the evidence that the requested analysis has the potential to result in evidence that is material to his identification as the perpetrator of the crime, or that a reasonably effective attorney would have sought the forensic analysis at issue. The defendant has also failed to establish a sufficient chain of custody.

### Prior Proceedings

On April 16, 2004, a Worcester County Grand Jury returned indictments charging the defendant with home invasion, G.L. c. 265, § 18C, armed assault in a dwelling, G.L. c. 265, § 18A, aggravated rape, G.L. c. 265, § 22(a), and assault and battery, G.L. c. 265, § 13A. 21. The matter was tried before Fecteau, J., and a jury on February 27, 2006.

On March 1, 2006, the jury convicted the defendant of home invasion, armed assault in a dwelling, rape, and assault and battery. On March 3, 2006, Judge Fecteau sentenced the defendant to concurrent terms of 20 to 25 years in state prison for the defendant's home invasion and armed assault in a dwelling convictions. Judge Fecteau imposed a concurrent 18-20 year

1

sentence for the rape conviction and sentenced the defendant to five years of probation on and after his state prison sentences for the assault and battery conviction.

The defendant filed a notice of appeal on March 3, 2006. On October 19, 2009, in a published decision, the Appeals Court affirmed the defendant's convictions. *Commonwealth v. Putnam*, 75 Mass. App. Ct. 472 (2009). On September 14, 2011, the defendant filed a *pro-se* motion for a new trial which was denied by Kenton-Walker, J., on November 22, 2011. The defendant filed his notice of appeal from the denial of that motion on December 19, 2011. The Appeals Court affirmed the order denying the defendant's motion for a new trial in an unpublished decision on February 28, 2013. *Commonwealth v. Putnam*, 83 Mass. App. Ct. 1115 (2013).

On February 7, 2014, the defendant filed a *pro-se* motion for post-conviction forensic and scientific testing pursuant to G.L. c. 278A. On February 28, 2014, the defendant filed his second *pro-se* motion for a new trial. On April 24, 2014, Ricciardone, J., denied the defendant's second new trial motion and dismissed the defendant's motion for post-conviction testing. The defendant filed a notice of appeal from the denial of his second motion for a new trial on May 9, 2014. R.26. The Appeals Court affirmed the order denying the defendant's second motion for a new trial in an unpublished decision on March 19, 2015. *Commonwealth v. Putnam*, 87 Mass. App. Ct. 1111 (2015).

On October 2, 2015, the defendant filed his third *pro-se* motion for a new trial which was denied by Frison, J., on December 11, 2015. R.1-16, 26. The defendant filed a notice of appeal from the denial of his third motion for a new trial on December 28, 2015. R.9, 26. This appeal is currently pending before the Appeals Court.

On July 25, 2016, the defendant filed his second *pro-se* motion for post-conviction

forensic and scientific testing pursuant to G.L. c. 278A. On September 6, 2016, the Court (Tucker, J.) found that the defendant's motion was sufficient to proceed under G.L. c. 278A, § 3(e), and granted the Commonwealth sixty days to reply, pursuant to G.L. c. 278A, § 4.

## Facts

The Appeals Court recited the following facts in its opinion affirming the defendant's convictions *Commonwealth v. Putnam*, 75 Mass. App. Ct. 472, 473-76, *rev. denied*, 455 Mass. 1105 (2009):

> The victim, a self-employed counseling psychologist, lived on Old Mill Road in Harvard. Old Mill Road is a two-lane road with fields and woods, as well as isolated houses in the surrounding area. The victim's nearest neighbors were Anne Marie Arnold and Hank Emerson, who lived together about one-eighth of one mile down the road, on a working farm. The defendant lived on Arnold's property in an apartment across from the main house. He worked on the farm as a handyman and a helper.

> The victim first met the defendant in 2001 at a block party. In 2002, the victim paid the defendant to clean leaves from her roof and her gutters. Around the same time, they had a few brief conversations. The victim occasionally saw the defendant on Arnold's property.

> The day after Thanksgiving in 2003, in the early evening, the defendant knocked on the victim's front door and asked to come into her house. He appeared upset and intoxicated. After she allowed him in, the defendant asked the victim for help; he told her that he had been drinking and doing drugs and that he was not taking his medication. The victim told the defendant to stop drinking, to stop doing drugs, and to take his medication. The defendant then rambled on for about one-half hour; the victim thought the defendant was asking for her professional opinion but she did not give him one. The victim tried to bring the conversation to a close; the defendant eventually left. The next day, the victim called Emerson and told him that she was concerned about the defendant, that she thought he was in bad shape and doing drugs, and that he seemed mentally unstable.

> On January 18, 2004, Arnold asked the defendant to leave the property because he had not performed any work on the farm for the prior two months. Arnold suspected that the defendant was drinking and doing drugs.

> On January 26, 2004, around 8:30 P.M., while the victim was on the telephone, the defendant knocked on her door. The victim opened the door a few inches and saw the defendant. The defendant said that he wanted to come in and

sufficient to establish that it has not deteriorated, been substituted, tampered with, replaced, handled or altered such that the results of the requested analysis would lack any probative value;

(3) that the evidence or biological material has not been subjected to the requested analysis for any of the reasons in clauses (i) to (v), inclusive, of paragraph (5) of subsection (b) of section 3;

(4) that the requested analysis has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case;

(5) that the purpose of the motion is not the obstruction of justice or delay; and

(6) that the results of the particular type of analysis being requested have been found to be admissible in courts of the commonwealth.

G.L. c. 278A, § 7(b); *Commonwealth v. Wade*, 475 Mass. 54, 55 N.E.3d 409, 413 (2016).

The defendant, pursuant to G.L. c. 278A, seeks to have ten items, which he asserts were admitted as exhibits at trial, tested for DNA analysis. The defendant claims that the requested testing and analysis will support his claim that the sexual encounter was consensual. D.M.2-3; Def.Aff.pars.4,5. The defendant has not shown by a preponderance of the evidence that the requested analysis has the potential to result in evidence that is material to his identification as the perpetrator of the crime, or that a reasonably effective attorney would have sought the forensic analysis at issue. The defendant has also failed to show by a preponderance of the evidence an adequate chain of custody of the listed items. Finally, the defendant has failed to demonstrate that some of the items are available to be tested or even exist. Therefore, this Court should deny the defendant's motion.

8

A. Gray Slacks and Tunic

The defendant has failed to establish by a preponderance of the evidence a sufficient chain of custody for the slacks and the tunic. The victim was wearing gray slacks[3] and a tunic when she was assaulted by the defendant.   These items were sent to the Massachusetts State Crime Lab on January 27, 2004, and were returned to the Harvard Police Department on February 18, 2005. Commonwealth's Exhibit C. The gray slacks were entered into evidence at trial as Exhibit 9 and the tunic (sweater) was entered into evidence as Exhibit 6. These items are currently stored in the Worcester Superior Court Clerk's Office. The defendant has utterly failed to demonstrate that these items have been "subject to a chain of custody that is sufficient to establish that it has not deteriorated, been substituted, tampered with, replaced, handled or altered such that the results of the requested analysis would lack any probative value." G.L. c. 278A, § 7(b)(2); *Commonwealth v. Clark*, 472 Mass. 120, 136 (2015) (case remanded for judge to make factual findings and conclusion of law as to whether knife handle which has been in custody of District Attorney's Office since 1973 would lack any probative value due to deterioration or handling of item). The slacks and tunic have been stored in the clerk's office for over ten years since the trial occurred in February of 2006. The defendant has provided no evidence to establish that the items have not deteriorated or been handled or altered such that the DNA testing would have any probative value. *See Clark*, 472 Mass. at 132 (defendant submitted affidavit from expert who opined that knife handle could potentially have biological material which could be DNA tested).

---

[3] The defendant lists "Wool Pants" as one of the items requesting to be DNA tested and refers to a portion of analyst Dygan's testimony in support of his request. D.M.2; Tr.II:106-10. Reading Dygan's testimony as a whole, it is clear that when she states "gray wool pants" (Tr.II:106), she is referring to the victim's gray slacks/Exhibit 9.

Moreover, the defendant has failed to establish by a preponderance of the evidence that either the slacks or the tunic "has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case." G.L. c. 278A, § 7(b)(4). At trial, the central issue for the jury to resolve was consent. The victim testified that the defendant, her neighbor, unlawfully entered her residence armed with a knife. When the victim attempted to call another neighbor for help, the defendant grabbed her around her back, shoved her, punched her face, violently knocked the telephone out of her hand, pulled her hair, and repeatedly punched her. She then testified that, after threatening her with the knife, the defendant ripped off her pants and underwear, digitally raped her, and attempted to rape her with his penis. When the defendant attempted to take his shirt off, the victim ran out of the house and down the street half naked in the freezing cold to her neighbor's house.

The defendant testified at trial that the victim voluntarily let him in to the house, and they talked for a while because the defendant felt suicidal and was drinking again. He claimed he brought the knife with him to give to the victim because he was afraid that he was going to cut his wrists. The defendant testified that he and the victim engaged in consensual sexual activity until the victim told him to stop. He claimed that he immediately stopped and then the victim got up and ran out the door half naked. He stayed in the house for a few minutes and then he went back to his apartment, grabbed some beer, and walked into the woods.

Under either version testified to at trial, identity was not an issue. The central issue for the jury to resolve was consent. To date, the defendant has filed numerous briefs and motions for new trial in which he continuously avers that the entire encounter with the victim was consensual. *Putnam*, 75 Mass. App. Ct. at 476-78 (Appeals Court rejected defendant's claim that there was insufficient evidence to sustain his home invasion and armed assault in a dwelling

conviction where defendant asserted that entry was consensual); *Commonwealth v. Putnam*, 83 Mass. App. Ct. 1115 (2013) (Appeals Court affirmed order denying defendant's first new trial motion, rejecting defendant's claim that appellate counsel was ineffective for failing to challenge rape conviction on appeal where, according to defendant, the evidence showed it was consensual); *Commonwealth v. Putnam*, 87 Mass. App. Ct. 1111 (2015) ( denial of second new trial motion affirmed where Appeals Court rejected defendant's claim of insufficient evidence of rape and defendant's assertion that victim fabricated her testimony).   Indeed, the defendant currently has a fourth appeal pending at the Appeals Court in which the defendant is appealing the denial of his third new trial motion.  *Commonwealth v. Putnam*, Appeals Court No. 16-P-0489.   In this current appeal, the defendant has included in his record appendix an affidavit in which he again avers that the entire encounter with the victim was consensual.  Commonwealth Exhibit D.  The defendant makes the same claim in his petition for forensic analysis, claiming only that the testing sought will be relevant to the issue of consent.

The defendant has not provided a shred of evidence or argument to suggest that DNA testing of the items at issue would be material to his identification as the perpetrator, or that it would support his assertion that his encounter with the victim was consensual.  He also fails to provide any support for the proposition that showing consent is a proper basis for ordering post-conviction forensic analysis.  In addition, in regards to the grey slacks, analyst Dygan testified that she tested the slacks for the presence of blood and seminal fluid and the results were negative.  Given the strength of the evidence and the uncontested nature of the defendant's identification at trial, and his repeated assertion that his encounter with the victim was consensual, the defendant has not shown by a preponderance of the evidence, and could not

11

show, that the requested analysis has the potential to result in evidence that is material to his identification as the perpetrator of the crime.

For the same reasons, the defendant has not shown, by a preponderance of the evidence, that a reasonably effective attorney would have sought the forensic analysis at issue.  G.L. c. 278A, §§ 3(b)(5)(iv), 7(b)(3).  Whether "a reasonable attorney" would have sought the requested testing is an "objective" inquiry.  *Commonwealth v. Wade*, 467 Mass. 496, 512 (2013).  Given the defense of consent and the defendant's repeated admission of being in the victim's home, bringing a knife, and having sexual contact with her, a reasonable attorney would not have sought the requested DNA testing since such testing would have undermined the defense of consent.  *See Strickland v. Washington*, 466 U.S. 688, 691 (1984) ("when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable").  Again, the defendant presents no evidence and makes no argument to support his request other than to simply assert that a reasonable attorney would have sought the requested analysis.  D.M.3.   This Court should deny the defendant's request to have the victim's grey slacks and tunic DNA tested.

### B.  Underwear, Slippers and Socks, and Turtleneck

The victim's underwear, slippers, socks, and turtleneck were collected at the scene and from the victim and were transported to the crime lab on January 27, 2004.  Commonwealth's Exhibit C.  These items were returned to the Harvard Police on February 18, 2005.  *Id.*  At trial, the victim's underwear was admitted at Exhibit 10, her slippers and socks were admitted as Exhibit 8, and her turtleneck was admitted as Exhibit 7.  These items are currently stored in the Worcester Superior Court Clerk's Office.  For the same reasons as argued above, the defendant

has utterly failed to demonstrate that these items have been "subject to a chain of custody that is sufficient to establish that it has not deteriorated, been substituted, tampered with, replaced, handled or altered such that the results of the requested analysis would lack any probative value." G.L. c. 278A, § 7(b)(2).

Moreover, the defendant has completely failed to show by a preponderance of the evidence, and indeed cannot show, that the requested analysis on these items has the potential to result in evidence that is material to his identification as the perpetrator of the crime.  The defendant has not provided a shred of evidence or argument to suggest that these items contain any biological material to conduct a DNA test or that forensic testing of the items at issue would cast light upon the identification of the perpetrator.  *Contrast Wade*, 467 Mass. at 506-10 (defendant provided sufficient information to demonstrate that requested DNA testing could be material to the question of who committed the aggravated rape where evidence presented at trial established that a third party contributed to seminal fluid found in the victim's vagina and on her clothes, where defendant denied raping or having sexual intercourse with victim, and where the DNA testing could identity a third party and exonerate the defendant); *Clark*, 472 Mass. at 135-36 (defendant established by a preponderance of evidence that the requested DNA analysis on knife handle had the potential to result in evidence that is material to defendant's identity as rapist where defendant provided affidavit of expert opining that testing was possible and where victim testified that she stabbed her rapist in the shoulder with the knife) .

Finally, as argued above, the defendant's defense at trial and his continual assertion to this day, was that his encounter with the victim was consensual.  The defendant again fails to demonstrate or even argue how the testing of these items would support his assertion that his encounter with the victim was consensual (assuming that a claim of consent is even relevant to

the defendant's request for testing) or that a reasonable attorney would tests these items. This Court should deny the defendant's request to have the victim's underwear, slippers, socks, and turtleneck DNA tested.

### C. Skin cells, Sweatpants, and Unknown Stains

According to the victim's testimony, after the defendant raped her, she ran down the street half naked in the freezing cold to her neighbor's house; they let her in, and gave her a pair of sweatpants to put on. Tr.I:198-200. The crime lab received the sweatpants from Harvard Police on January 27, 2004, and returned them to Harvard Police on February 18, 2005. Commonwealth's Exhibit C. These sweatpants were not entered into evidence at trial. The defendant seeks to have these sweatpants, "skin cells" and "unknown stains" DNA tested. The defendant has utterly failed to establish that the evidence or biological material exists. G.L. c. 278A, § 7(b)(1). For this reason alone, this Court should deny the defendant's request. In addition, the defendant again fails to demonstrate any chain of custody, to explain or show how the testing of these items would be material to identifying the perpetrator or support his assertion that his encounter with the victim was consensual, and to demonstrate that a reasonable attorney would have tested these unknown items. The defendant's motion should be denied.

## Conclusion

Based upon the foregoing, this Court should deny the defendant's motion for post-conviction access to forensic analysis.

FOR THE COMMONWEALTH:

DONNA-MARIE HARAN
ASSISTANT DISTRICT ATTORNEY
Courthouse Room G301
225 Main Street
Worcester, Massachusetts 01608

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Steven Putnam, *Pro-se*, W87245-Box 43, Norfolk, MA 02056 by first class mail, postage prepaid, on October 5, 2016.

Donna-Marie Haran

15

## 0485CR00666 Commonwealth vs. Putnam, Steven

| Case Type | Indictment | Initiating Action: | HOME INVASION c265 §18C |
|---|---|---|---|
| Case Status | Open | Status Date: | 05/23/2014 |
| File Date | 04/16/2004 | Case Judge: | |
| DCM Track: | I - Inventory | Next Event: | |

All Information | Party | Charge | Event | Docket | Disposition

### Party Information

Commonwealth - Prosecutor

Alias

| Party Attorney | |
|---|---|
| Attorney | Haran, Esq., Donna Marie |
| Bar Code | 664528 |
| Address | District Attorney's Office |
| | 225 Main Street |
| | Worcester, MA 01608 |
| Phone Number | (508)755-8601 |

More Party Information

Putnam, Steven - Defendant

Alias

Party Attorney

More Party Information

Harvard PD - Other interested party

Alias

Party Attorney

More Party Information

### Party Charge Information

Putnam, Steven - Defendant

**Charge # 1 :** 265/18C/A-0 - Felony     HOME INVASION c265 §18C

| Original Charge | 265/18C/A-0 HOME INVASION c265 §18C (Felony) |
|---|---|
| Indicted Charge | |
| Amended Charge | |

| Charge Disposition | |
|---|---|
| Disposition Date | 03/01/2006 |
| Disposition | Guilty |

Putnam, Steven - Defendant

**Charge # 2 :** 265/18A-0 - Felony     ASSAULT IN DWELLING, ARMED c265 §18A

| Original Charge | 265/18A-0 ASSAULT IN DWELLING, ARMED c265 §18A (Felony) |
|---|---|
| Indicted Charge | |
| Amended Charge | |

| Charge Disposition | |
|---|---|
| Disposition Date | 03/01/2006 |
| Disposition | Guilty |

Putnam, Steven - Defendant

*Comm. Exhibit A*



**The Commonwealth of Massachusetts**

### SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY

#### JOHN ADAMS COURTHOUSE
ONE PEMBERTON SQUARE, SUITE 1300
BOSTON, MASSACHUSETTS 02108-1707
WWW.SJCCOUNTYCLERK.COM

October 29, 2021

Exhibit I

MAURA S. DOYLE
CLERK

CASE INFORMATION (617) 557-1100
FACSIMILE (617) 557-1117

ATTORNEY SERVICES (617) 557-1050
FACSIMILE (617) 557-1055

Steven M. Putnam, Pro Se
MCI-Norfolk
P.O. Box 43
Norfolk, MA 02056

RE:  No. SJ-2021-0387

    STEVEN M. PUTNAM
       v.
    NELSON B. ALVES

    Worcester Superior Court
    No.0485CR00666 (WORCESTER SUPERIOR COURT); 2021-P-0603
(APPEALS COURT)

### NOTICE OF DOCKET ENTRY

You are hereby notified that on October 29, 2021, the

following was entered on the docket of the above referenced case:

ORDER: as on file. (Lowy, J.)


               /s/ Maura S. Doyle
               Maura S. Doyle, Clerk

To:  Steven M. Putnam
    Worcester Superior Court Dept.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                              SUPREME JUDICIAL COURT
                                          FOR SUFFOLK COUNTY
                                          No. SJ-2021-0387

                                          Worcester Superior Court
                                          No.0485CR00666


**STEVEN M. PUTNAM**

**v.**

**NELSON B. ALVES**


**ORDER OF TRANSFER**

It is ORDERED, pursuant to the provisions of G. L. c. 211,

§ 4A, that the above-entitled case, concerning Steven M.

Putnam's writ of habeas corpus, be transferred to the

Superior Court Department of the Trial Court for the County of

Worcester for entry and disposition, subject to any filing

fee requirements of the said Superior Court.


                              By the Court, (Lowy, J.)
                              /s/ Maura S. Doyle
                              Maura S. Doyle, Clerk

Entered: October 29, 2021

COMMONWEALTH OF MASSACHUSETTS

WORCESTER SS.                           SUPERIOR COURT

                                        No. 0485CR00666

Commonwealth v. Putnam,

DEFENDANT'S MOTION FOR THE COURT
TO COMPEL THE COMMONWEALTH TO
CONDUCT FORENSIC TESTING

The defendant, appearing Pro Se, moves this
Honorable Court, pursuant to G.L. c. 278A §7(a)(b)(c);
§16(a)(b); Mass.R.Crim.P. 30(c)(4), to compel the
Commonwealth to conduct forensic testing on the following
evidence which is in their custody:

a.   Sexual Assault Kit #22522 (Appendix 28)

b.   Sweater      (Appendix 31)

c.   Slacks       (Appendix 32)

d.   Shirt        (Appendix 32)

e.   Underpants   (Appendix 32)

f.   Slippers     (Appendix 32)

g.   Sweatpants   Appendix 33)

h.   Jacket       (Appendix 33)

i.   Socks        (Appendix 33)

j.   Blood Standard [for matbhing] (Appendix 28)

See: Chain Of Custody Report for Lab Case No. 04-
00766, created August 23, 2016.

278A                        -2-                        Putnam


As grounds therefore, the defendant has com-
pleted the sentence he received for the violation of
G.L. c. 265 §22.  He wishes to clear his name of all
convictions because he is actually innocent of all
charges, including armed Home Invasion (G.L. c. 265
§18C); Armed Assault In A Dwelling (G.L. c. 265 §18A)
and Assault & Battery (G.L. c. 265 §13).

As further grounds [citing] Commonwealth v.
Williams, 481 Mass. 799(2019), the Supreme Judicial
Court found that actual innocence "satisfies the §3(b)(4)"
paragraph in Chapter 278A.

The defendant has presented the name and a de-
scription of the requested forensic or scientific
analysis. [Appendix 17-24]

The information demonstrating the requested
analyses are admissible, based on the evidence de-
lineated in [Appendices 1-10], which is the eviden-
tiary foundation for forensic testing to satisfy the
Confrontation Clause of the Sixth Amendment.  See,
Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527, 2531

278A                          -3-                          Putnam

(2009)(Evidence to be tested by Lab Technician(s) is
"testimonial.")

A description of the evidence appears in [Appendices
28-36], evidence of both parties' clothing, and bodily
parts.

According to sworn testimony, the complaining
witness claimed the defendant "ripped off my clothing
on the bottom of my body," [Appendix 1], as she was
wearing "slacks and a tunic and underwear and slippers
and socks." [Id.]

The complaining witness testified there was "...
a little blood there and there's blood on the right-
hand side." [Appendix 3]

Q.   And is that the area where the defendant
     grabbed you?

A.   Yes.              [Id.]

There was a turtleneck, shoes, slippers and socks,
pants (slacks), and finally, underpants. [Appendices
4-6]

Additive 4, p. 5

278A                              -4-                    Putnam

A Lab technician testified she tested for blood
and seminal fluid, which was negative. [Appendix 10]
Handler DNA testing was not done, or even requested.
[Appendix 11]  These items sat around for 12 months.
[Appendix 12]

The Lab Technician stated that tests could be
conducted years later. [Appendix 13]

Even though closing arguments are not evidence,
the jury was told that someone "thought that was blood
on the sweater from him." [Appendix 15]

Compare [Appendix 23, ¶10]. Was it wine on the
sweater?

Pursuant to G.L. c. 278A §7(a)(1)(2), the evi-
dence exists, [Appendices 25-36], under §7(b)(4), has
the potential to show the defendant is innocent of
the crimes for which he was charged, that he is not
attempting to obstruct justice and that the tested
evidence would be admissible in the Worcester Superior
Court specifically for this proceeding.

Additive 4, p. 6

278A                           -5-              Putnam


On August 24, 2004, the defendant moved for
Discovery under Mass.R.Crim.P. 14(a)(1)(A) [Amended,
March 8, 2002]:

> Automatic Discovery - Mandatory Discovery
> For the Defendant

> The prosecution shall disclose to the defense,
> and permit the defense to discover, inspect and
> copy, each of the following items and information
> at or prior to the pretrial conference, provided
> it is relevant to the case and is in the possession,
> custody or control of the prosecutor, persons under
> the prosecutor's direction and control, or persons
> who have participated in investigating or evalu-
> ating the case and either regularly report to the
> prosecutor's office or have done so in the case.

> [Emphasis added]

Subdivisions (a)(1)(A) and (1)(1)(B) shall have
the force and effect of a Court Order. [Emphasis added]
(The word "shall" is a mandatory obligation in the
Commonwealth. Hashimi v. Kalil, 386 Mass. 607, 609 (1983)

In Warden v. Oregon, 412 U.S. 470, 473-474 (1973)
the United States Supreme Court held:

Additive 4, p. 7

278A                         -6-                    Putnam

>"...the end of justice will best be
>served by a system of liberal discovery
>which give both parties the maximum
>possible amount of information with which
>to prepare their cases and thereby reduce
>surprise at trial."

What was a "surprise" to the defense was the
complaining witness's statement, "And then he ripped
off my clothing." [Appendix 1] The prosecutor showed
a picture of the couch to the jury, which was not sig-
nificant evidence. [Id.]

What would have been significant evidence was the
Lab Technician's testimony the clothing was ripped and
the actual clothing put forth as evidence.  The identi-
fication of the defendant as a rapist by producing the
so-called ripped/torn clothing would have lent some
credibility to the complaining witness's story. see,
Commonwealth v. LaCorte, 373 Mass. 700, 704 (1977),
otherwise deconstructed on cross-examination. see,
Commonwealth v. Rodriguez, 378 Mass. 296, 308 (1979)

Any item of real evidence must be authenticated,
or "identified" as the thing or event its proponent
represents it to be. LaCorte, 373 Mass. at 704.

278A                          -7-               Putnam


Then, there is the Tunic, where, "there's a
little blood there and there's blood on the right-hand
side." [Appendix 3]

The "Chain of Custody" for this tunic is established
[Appendix 33] but the identification of blood on it was
not. Commonwealth v. Hogg, 365 Mass. 290 (1974); And...
Commonwealth v. Herring, 66 Mass. App. Ct. 360 (2006)
(Authenticating whether cocaine rocks were same as those
seized from the defendant's apartment)

By failing to test these items for identifiable
authenticity, the Commonwealth faces dismissal of the
charges where the defendant is prejudiced by the omissions.
Commonwealth v. Willie, 400 Mass. 427, 432 (1987)

The defendant here has established a reasonable
probability, clearly and convincingly, the Common-
wealth's actions deprived him of evidence which would
have been favorable to his defense at trial. Common-
wealth v. Gliniewicz, 398 Mass. 744 (1986); Commonwealth
v. Fitzgerald, 402 Mass. 517 (1988)(defendant entitled to
new trial in rape case based on newly discovered medical
bill proving vasectomy, due diligence demonstrated)

278A                        -8-                    Putnam


Here, the Chain of Custody Report, produced on
August 23, 2016, from the initial date of January 27,
2004 shows the evidence, because of "Handler DNA"
evidence was put into cold storage. [Appendix 25]
(Appendix 28, for "Blood") [Appendix 32 for slacks,
shirt, and underpants];[Appendix 31 for sweater] And...
[Appendix 33 for the sweatpants and Tunic].

The trial was held February 28, 2006.  The knife,
(3½" pocketknife), finger and palm prints, photographs,
Sexual Assault Kit, Saliva Sample, Genital Swabs, Head
Hairs, Pubic Hair, Sweater, Slacks, Shirt, Underpants,
footwear, sweatpants, Tunic and socks from the complaining
witness were all returned to the government by February
21, 2006, along with the defendant's boots, and jacket.
[Appendix 35]

The Court used Commonwealth v. Mahar, 430 Mass.
643, 652 (2000) for the Armed Assault in a Dwelling
charge, piggy-backed onto a Home Invasion, based on the
3½-inch pocketknife.  Lesser including offenses not-
withstanding, the complaining witness told the physician

Additive 4, p. 10

278A                    -9-              Putnam

at Emerson Hospital, "There was no vaginal or rectal
penetration and there was ejaculation." [Exhibit A,
p. 5]

In the Patient's Report of Incident, [Exhibit A,
p. 9] the complaining witness told the Sexual Assault
Nurse Examiner (SANE), Carol Frechette, that the defen-
dant [...attempted to penetrate her vagina but was unable
to reach an erection." There was no report by the com-
plaining witness to the SANE that the defendant used
his finger to penetrate her. [Id.]

According to the Provider Sexual Crime Report on
Acts Described By The Patient/Victim, only an "attempt"
was listed, not an actual penetration. [Exhibit A, p.
13]

In the E.M.S. Run Report by Carol Berwind (sic)
the EMS attendant reported the patient "stated he did
not penetrate her." [Exhibit A, p. 14]

The complaining witness testified under oath,
"Well, he lay on top of me and then he put his finger

Additive 4, p. 11

278A                    -10-                 Putnam

"in my vagina and then he kept thrusting." [Appendix 7, lines 6-7]

The testimony of the complaining witness should have been challenged by her prior contradictory statements, prior to trial, which would have been admissible on cross-examination, had the clothing been tested for Handler DNA, whether stains in the Tunic were actually blood, and the defendant's blood tested or submitted to DNA analysis for "matching" purposes. Commonwealth v. Evans, 439 Mass. 184, 191-192 (2003)

There would have been no discretion on the admissibility on these tests, as there should be none here. Schwartz v. Goldstein, 400 Mass. 152 (1981)(breach on confidentality on prior inconsistent medical statement admissible)

This G.L. c. 278A motion, taken as a whole, affords this Court more than just "an indication" the facts presented are different than the testimony at trial. Commonwealth v. West, 312 Mass. 438, 440-441 (1942)

Additive 4, p. 12

278A                         -11-               Putnam

The evidence/testing requested is testimonial
in nature. Commonwealth v. Hughes, 380 Mass. 583,
588 (1980), which is evidence that reveals the identi-
fication of evidence which will support/contradict
the witness's knowledge or thoughts concerning the
facts of the case. Commonwealth v. Brennan, 386 Mass.
772, 778 (1982)

The question is this:  On the evidence submitted
to the State Laboratory for testing, does the lack of
testing indicate an adverse legal position for the
Commonwealth, i.e., inference-wise?  Commonwealth v.
Bowden, 379 Mass. 472, 485-486 (1980)

The Commonwealth now has the right to give a
reason for the actual failed tests.  Commonwealth v.
Flanagan, 20 Mass. App. Ct. 472, 476 [n.1,2] (1985)

That the complaining witness may have been em-
barassed by the implication that the prosecutor coached
her to claim (at Court) penetration by a finger, and
contradicted by the Doctor's report, is of no moment
here. Commonwealth v. Johnson, 365 Mass. 534, 543-544
(1974)

Additive 4, p. 13

278A                           -12-                    Putnam

The tests would have led to proper cross-examina-
tion, assuming a Constitutional dimension under the
Confrontation Clause of the Sixth Amendment, and Article
12 of the Massachusetts Declaration Of Rights.  See,
Commonwealth v. Grenier, 415 Mass. 680, 686 (1993)(Brady
v. Maryland, 373 U.S. 83 (1963) - material must be dis-
closed to the defendant)

By its very nature, G.L. c. 278A places the burden
on the defendant, but the Commonwealth cannot escape
its responsibility by failing to conduct the tests,
which would have proven the defendant's innocence, at
the least would have raised the spectre of reasonable
doubt in the minds of the jurors.  Whether this was
deliberate on the part of the prosecutor or negligence,
is a question of law for this Court.. Committee For
Public Counsel Services v. Attorney General, 480 Mass.
700, 704 (2018) [citing] Commonwealth v. Tucceri, 412
Mass. 401, 408 (1992) and Brady, ante, at 87.

That the Commonwealth withheld testing is a matter
of fact, which, if the evidence had any tendency to

Additive 4, p. 14

278A                        -13-                Putnam

exculpate the defendant.   There is no choice. <u>CPCS</u>,
480 Mass. at 733.

In <u>Commonwealth v. Wade</u>, 467 Mass. 496 (2014),
the Supreme Judicial Court held that under G.L. c. 278A
§3(d), the defendant must file "an affidavit stating
the moving party is factually innocent of the offense
of conviction..." which the defendant has submitted.
[Exhibit B]

Also, as argued in this pleading, the defendant
shows by clear and convincing evidence, <u>Callahan v.
Westinghouse Broadcasting Co. Inc.</u>, 372 Mass. 582, 584
(1977), "the requested forensic or scientific analysis
will support the claim of innocence." <u>Wade</u>, 467 Mass.
at 502.

As in <u>Wade</u>,dismissal of the motion was error as
no "...subsection of G.L. c. 278A §3 imposes upon a
moving party the burden of establishing a reasonable
probability of a more favorable result at trial."
<u>Id.</u>,467 Mass. 507.

Additive 4, p. 15

278A                        -14-                  Putnam


See Commonwealth v. Putnam, 481 Mass. 1045
(2019)[Appendix 37-40]  Also, as in Wade, "... as
stated in G.L. c. 278A §3(b)(5)(iv), 'a reasonably
effective attorney would have sought the analysis"
and the defendant's attorney failed to seek such
analysis.  Id., Wade, 467 Mass. at 510.

The Commonwealth's Opposition to the defendant's
motion, filed October 5, 2016, places all the blame
for the lack of testing on the defendant, which is
clearly refuted by the Chain of Custody Report. [Appen-
dix 25-36]

Contrary to the Commonwealth's argument, the
Chain of Custody Report (printed 8/23/2016, with no
evidence it was submitted to the defense prior to
trial) is evidence of where the items to be tested
are kept, and why they were not tested for "handler
DNA", and whether it was really blood on the Tunic.
Commonwealth v. Linton, 483 Mass. 227, 229 (2018);
Commonwealth v. Moffat, 478 Mass. 292 (2017)

Additive 4, p. 16

278A                        -15-                Putnam


The Commonwealth, in its Opposition, forgot to
mention G.L. c. 278A §2:

> "[T]his chapter shall not be construed
> to prohibit the performance of forensic
> or scientific analysis 'under any other
> circumstances,' including by agreement
> between the person convicted of a criminal
> offense and the prosecuting attorney."

[Emphasis added]

The language of the statute is the starting point
for all questions of statutory interpretation. Hoffman
v. Howmedia Inc., 373 Mass. 32, 37 (1977)  And...
there is a presumption that the Legislature says in a
statute what it means and means in a statute what it
says. Connecticut National Bank v. German, 503 U.S.
249 (1992)

Again, the word "shall" means mandatory obligation.
Johnson v. District Attorney for Northern District, 342
Mass. 212 (1961)

The factual dispute, based on the two parties'
testimony appears on page 10 of the Opposition, in-
cluding the limitation of "identity" not being

Additive 4, p. 17

278A                        -16-                  Putnam

an issue. [Id.] The defendant's history of asserting

his actual innocence appears on page 2, [citing]

Commonwealth v. Putnam, 75 Mass. App. Ct. 472 (2009)

[citing] Commonwealth v. Mahar, 430 Mass. 643, 646-647

(2000)(entry was unlawful where the defendant was ad-

mitted into the home by a person who was unaware that

the defendant entered the home while armed, with the

intent to commit an assault upon the person in the

dwelling. Putnam 75 Mass. App. Ct. at 477.

In Commonwealth v. Putnam, 83 Mass. App. Ct. 1115

(2013), the Court, Green, Graham & Sullivan, JJ., held:

> "[I]t does not matter that some of the [victim's
> testimony] could be characterized as equivocal
> or contradictory...'Credibility is a question
> for the jury to decide,' and they permissibly
> accredited the victim's testimony." [citing]
> Commonwealth v. Ruci, 409 Mass. 94, 97 (1991)

However, the jury at the Putnam trial was not

allowed to see and hear "all proofs." Commonwealth v.

Louraine, 390 Mass. 28, 34-38 (1983), which would

refute the Commonwealth argument, "...the requested

DNA testing since such testing would have undermined

the defense of consent." [Opposition, p. 12]

Additive 4, p. 18

278A                    -17-              Putnam

Aside from the "clairvoyant" Commonwealth attorney's supposition, the testing is relevant evidence then and now to prove the truth of the defendant's testimony.

It may be obvious to this Honorable Court that the statutory intent of G.L. c. 278A is to ameliorate injustice in a conviction which would change the out-come of the jury's verdict.

In <u>Melendez-Diaz</u>, ante, the Court held that Due Process required the Commonwealth to notify the defense they had no intention of testing potential exculpatory evidence, readily admitted in the trial. <u>Melendez-Diaz</u>, 129 S.Ct. at 2541.

The Lab Technician testified at trial there was Handler DNA to be tested. [Appendix 8]  She tested the pants for blood and seminal fluid, which were negative. [Appendix 10]

On Redirect, Attorney Frasso was able to reveal that "even a year later, you would still be able to detect? [Appendix 13]

Additive 4, p. 19

278A                        -18-                Putnam


In her closing argument, Paula Frasso stated:
"And there were spots up on the shoulders...she thought
that was blood on the sweater from him." [Appendix 15]

As Justice Thomas stated:

> "...the documents at issue in
> this case are quite plainly
> affidavits...fall within the
> core class of testimonial state-
> ments governed by the Confron-
> tation Clause."

Melendiz-Diaz, 129 S.Ct. at 2543.


The defendant does not claim insufficient evi-
dence or a procedural default, or statements other than
his claims of factual innocence because not only has
he presented his motion with a preponderance of the
evidence, Corsetti v. The Stone Co., 396 Mass. 1, 23-
24 (1985), but with clear and convincing evidence.
Callahan v. Westinghouse Broadcasting Co. Inc., 372
Mass. 582, 584 (1977)(the probability that the testing,
if performed, is exculpatory, is substantially greater
than the probability that the testing would prove to
be inculpatory) Commonwealth v. Burke, 390 Mass.
480, 483-484 (1983)(Commonwealth has the dual burden

Additive 4, p. 20

278A                      -19-                Putnam

of production and persuasion)

The defendant has a Due Process, Constitutional
right to have this testing performed. <u>Cote-Whitacre v.</u>
<u>Department of Public Health</u>, 446 Mass. 350, 365 [n.15]
(2005)(Article 10 may afford greater rights than the
due process clause of the 14th Amendment to the U.S.
Constitution, this Honorable Court's instant regimen
of the due process challenge now adheres to the same
standards followed in Federal due process analysis)

> "No subject shall be held to answer
> for any Crimes or offence, until the
> same is fully and plainly, substantially
> and formally, described to him; ...And
> every subject shall have a right to
> produce all proofs, that may be favorable
> to him; to meet the witnesses against
> him face to face, and to be fully heard
> in his defence by himself, or his council,
> at his election...."

Article 12, Declaration Of Rights

The Supreme Judicial Court cautioned that:

> "Article 12 is one of the great landmarks
> of human freedom...It is an additional
> shield to protect the rights declared in
> Art. 10....The words 'law of the land' in
> Article 12, which were taken from the

Additive 4, p. 21

278A                          -20-                    Putnam


"Magna Carta, embrace all that is
comprehended in the words 'due process
of law' in the Fourteenth Amendment."

<u>Publiese v. Commonwealth</u>, 335 Mass. 471 (1957)


WHEREFORE, for the reasons stated above, in fact

and law, the defendant's motion should be granted, or,

in the alternative, if the testing cannot be provided,

the defendant's convictions must be vacated.


April 21, 2021                Respectfully submitted,

                              Steven M. Putnam, Pro Se
                              Box 43,
                              Norfolk, MA 02056

<u>Certificate of Service:</u>
I hereby certify that I mailed a true copy of the above
motion with Exhibits and Appendices, to Donna Marie
Haran, ADA, 225 Main Street, Worcester, MA 01608 on
April 21, 2021.

Additive 5, p. 2     Exhibit K

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

WORCESTER SUPERIOR COURT
DOCKET NO. 0485CR00666

COMMONWEALTH OF MASSACHUSETTS

v.

STEVEN M. PUTNAM

## COMMONWEALTH'S MOTION TO RESPOND TO DEFENDANT'S MOTION FOR COURT TO COMPEL THE COMMONWEALTH TO CONDUCT  FORENSIC TESTING AFTER COUNSEL HAS BEEN APPOINTED, AND HAS FILED AN AMENDED OR SUPPLEMENTAL MOTION OR DECLINED TO DO SO

The Commonwealth does hereby move that it be permitted to respond to the defendant's motion to compel the Commonwealth to conduct forensic testing after counsel has been appointed, and has filed an amended or supplemental motion or declined to do so.  As grounds therefor, the Commonwealth states the following:

(1)     On March 1, 2006, the defendant was convicted of home invasion, armed assault in a dwelling, rape, and assault and battery. The defendant was sentenced to concurrent terms of 20 to 25 years in state prison for his home invasion and armed assault in a dwelling convictions, to a concurrent 18-20 year sentence for his rape conviction and to five years of probation on and after his state prison sentences for his assault and battery conviction.

(2)     On October 19, 2009, in a published decision, the Appeals Court affirmed the defendant's convictions. *Commonwealth v. Putnam*, 75 Mass. App. Ct. 472 (2009).

(3)     On July 25, 2016, the defendant filed his second *pro-se* motion for post-conviction forensic and scientific testing pursuant to G.L. c. 278A.  On July 7, 2017, after several court

1

dates and CPCS refusal to assign counsel, Tucker. J. ordered CPCS to provide counsel to the defendant, and Attorney Merritt Schnipper was assigned.

(4)     On May 29, 2014, Kenton-Walker, J., denied the defendant's motion for forensic or scientific testing, concluding that the defendant did not meet his burden to show that the result would be material to the question of the identity of the perpetrator. On June 4, 2018, the defendant filed a notice of appeal from the order denying his motion for post-conviction forensic testing.

(5)     On April 9, 2019, the Supreme Judicial Court reversed Judge Kenton-Walker's order, concluding that the defendant met his threshold burden under G.L. c. 278A, § 3(b)(4) and remanded the case back to Superior Court for a hearing under G.L. c. 278A, § 7(b)(4) where the defendant would have to establish by a preponderance of the evidence that the testing "has the potential to result in evidence that is material to proving that no crime occurred." *Commonwealth v. Putnam*, 481 Mass. 1045, 1046-1047 (2019).

(6)     On March 29, 2021, the defendant filed a pro-se motion to revise and revoke sentence. On March 31, 2021, Wrenn, J. denied the defendant's pro-se motion to revise and revoke sentence as being untimely but directed that CPCS screen the matter for an appointment of counsel to follow up based on the ruling in *Commonwealth v. Putnam*, 481 Mass. 1045 (2019).

(7)     On April 16, 2021, the defendant filed a motion for reconsideration. On April 26, 2021, Reardon, J. denied the defendant's motion for reconsideration but reiterated that the previous order for CPCS screening for appointment of counsel on the defendant's G.L. c. 278A issues remained in effect.

(8)     On April 26, 2021, the defendant filed a pro-se motion to compel the Commonwealth to conduct forensic testing. On May 3, 2021, the Commonwealth was given 30 days to respond.

Additive 5, p. 4

(8)    If the Commonwealth responds to the defendant's *pro se* motion, and appointed counsel chooses to file a supplemental or amended motion in this matter, the Commonwealth will likely be required to file a second response to any supplemental or amended motion.

Wherefor, the Commonwealth does hereby move that it be permitted to respond to the defendant's motion to compel the Commonwealth to conduct forensic testing after counsel has been appointed, and has filed an amended or supplemental motion, or declined to do so.

> Respectfully submitted,
> for the Commonwealth
> JOSEPH D. EARLY, JR.
> District Attorney for
> the Middle District
>
> DONNA-MARIE HARAN
> Assistant District Attorney
> BBO # 664526
> Worcester Trial Court
> District Attorney's Office
> 225 Main Street, Room G301
> Worcester, MA  01608
> (508)757-2786

Dated: May 26, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Steven Putnam, *Pro-se*, P.O Box 43, Norfolk, MA 02056, by first class mail, postage prepaid, on May 26, 2021.

Donna-Marie Haran

3

Additive 7, p. 1   Exhibit L

Dennis P. McManus
Clerk of the Courts
Worcester Superior Court
225 Main Street
Worcester, MA 01608

Steven M. Putnam
W87245 - Box 43,
Norfolk, MA 02056

June 3, 2021

RE:  Com., v. Putnam,              No. 0485CR00666

Dear Mr. McManus:

    Enclosed please find for filing:

DEFENDANT'S REBUTTAL TO THE COMMONEALTH'S MOTION...
OF MAY 26, 2021

EXHIBITS A - C

    Please docket in your usual manner.

    Thank you for your kind assistance.

Very truly yours,

Steven M. Putnam, Pro Se

-46-

Additive 7, p. 2

COMMONWEALTH OF MASSACHUSETTS

WORCESTER SS.                    SUPERIOR COURT

                                 No. 0485CR00666

Commonwealth v. Putnam,

DEFENDANT'S REBUTTAL TO THE
COMMONWEALTH'S MOTION...
OF MAY 26, 2021

As of May 1, 2020, the CPCS Director Elizabeth
Dembitzer informed the defendant "...we will not be
assigning a new attorney to screen your case." (Ex. A)

On January 14, 2020, defendant's attorney (at that
time) wrote to him about the funding, which was un-
resolved. [Ex. B]

On May 13, 2020, Mr. Schnipper of Schnipper Hennessey
wrote to Ms. Dembitzer of CPCS on the issue of laboratory
testing. [Ex. C]

The Assistant District Attorney now wishes to delay
these forensic proceedings, "...after counsel has been
appointed, and has filed an amended or supplemental motion,
or declined to do so." [Commonwealth's Motion, p. 3,
May 26, 2021

This would be prejudicial to the defendant.

-47-

Additive 7, p. 3

Rebuttal                        -2-                        Putnam


The defendant's Benefactor is now willing to pay
for the testing, upon the itemized breakdown of the
testing costs, delinating each item to be tested.

There is no sound reason to accede to the Common-
wealth's Motion other than in the Commonwealth's wish.

The Commonwealth did not oppose the legal argu-
ments made for the [Motion To Compel] the testing to
be done, made on April 21, 2021, with a comprehensive
pleading, including Exhibits and Appendices.

The Supreme Judicial Court was clear when it
stated the defendant must demonstrate the requested
analysis has the potential to result in evidence that
is material where "no crime occurred..." Commonwealth
v. Putnam, 481 Mass. 1045 (2019)

Any further delays, where the defendant agrees to
pay for the testing upon receipt of an itemized cost
analysis, would continue to deny justice to the defen-
dant.

WHEREFORE, this Honorable Court must compel the
Commonwealth of Massachusetts' Crime Laboratory to send

-48-

Additive 7, p. 4

Rebuttal                    -3-                    Putnam

a proposed itemized list of objects to be tested,
for which the defendant will agree to pay. Then,  if
counsel is necessary, the Court can go from that point.


June 3, 2021                    Respectfully submitted,

                               Steven M. Putnam, Pro Se
                               Box 43,
                               Norfolk, MA 02056


Certificate of Service:
I hereby certify that I mailed a true copy of the above
Rebuttal to Donna Marie Haran, ADA, 225 Main Street G301
Worcester, MA 01608 on June 3, 2021.

-49-

Exhibit M


Francis V. Kenneally                    Steven M. Putnam
Clerk of the Court                      Box 43,
Supreme Judicial Court                  Norfolk, MA 02056
1 Pemberton Sq. 1400
Boston, MA 02108-1724                   November 8, 2021


RE:  Putnam v. Alves,                   No. SJC-2021-----

Dear Mr. Kenneally:

     Enclosed please find for filing:


PETITIONER'S VERIFIED MOTION FOR RECONSIDERATION TO
THE FULL BENCH, JUSTICES BUDD, GAZIANO, CYPHER, KAFKER,
WENDLANDT, & GEORGES, JR.


     Please docket in your usual manner.


     Thank you for your kind assistance.


                         Very truly yours,

                         Steven M. Putnam, Pro Se

COMMONWEALTH OF MASSACHUSETTS

WORCESTER SS.                    SUPREME JUDICIAL COURT

                                No. SJC-2021------

Steven  M. Putnam, Petitioner

-v-

Nelson B. Alves, Respondent

PETITIONER'S VERIFIED MOTION FOR
RECONSIDERATION TO THE FULL BENCH,
JUSTICES BUDD, GAZIANO, CYPHER,
KAFKER, WENDLANDT, & GEORGES, JR.

On his journey to the Federal District Court,
pursuant to 28 U.S.C. §2241, the petitioner respect-
fully filed a Petition For A Writ Of Habeas Corpus
under G.L. c. 248 §1. [Petition, p. 1]

The petitioner filed the petition in the Supreme
Judicial Court, the "state's highest Court," in order
to exhaust State remedies. Picard v. Connor, 404 U.S.
270, 272 (1971)(State prisoner must present the sub-
stance of his claim to the highest State Court to give
it a fair opportunity to apply controlling legal prin-
ciples to the facts bearing on the petitioner's con-
stitutional claim)

Recon                         -2-                  Putnam

The petitioner cited G.L. c. 248 §1:

> "Whoever is imprisoned or restrained of
> his liberty may, as of right and of course,
> prosecute a writ of habeas corpus, according
> to this chapter, to obtain release from
> such imprisonment or restraint if it proves
> to be unlawful,...."

The corollary to the State statute is 28 U.S.C.
§2241(c)(3):

> "Federal Courts may entertain an application
> for a writ of habeas corpus only on the ground
> that the prisoner's confinement violates the
> Constitution, Laws, or Treaties of the United
> States."

The petitioner filed the State petition because
after the State's highest Court remanded his G.L. c.
278A application under Commonwealth v. Putnam, 481 Mass.
1045 (2019) to the Worcester Superior Court, that Court
abused its discretion by not applying the facts to es-
tablished law. L.L. v. Commonwealth, 470 Mass. 169, 185
[n.27] (2014) and that the State's prosecutor had com-
mitted misconduct in the case.

The petitioner pointed out to the State's highest
Court that the violations were Structural Defects, not

Recon                        -3-                   Putnam

subject to harmless error analysis, and that the
petitioner was not challenging his conviction.  These
violations were contrary to the 5th, 6th, and 14th
Amendments to the United States Constitution and
Article XII of the Massachusetts Declaration Of Rights.
[Petition, p. 3]

The petitioner filed the petition on October 14,
2021 to the State's highest Court, the Supreme Judicial
Court, delineating the violations of Federal law, that
he should be relieved of any further incarceration.
[Petition, pp. 13-14]

For reference(s) see Petition For A Writ Of Habeas
Corpus, Appendices 1-10 - Additives 4, 5, 7, et. seq.

### Facts of the Case

For background only, see Commonwealth v. Putnam,
75 Mass. App. Ct. 472, 473-476 (2009) while noting the
petitioner has completed the sentence for the [alleged]
Rape conviction.

Recon                          -4-                    Putnam

## Argument

The petitioner, if the full bench does not correct Justice Lowy's abuse of discretion, will file a 28 USC §2241 petition in the District Court of Massachusetts. Pischke v. Litscher, 178 F.3d 497, 499 (7th Cir. 1999) (petition proper when filed in the district where the petitioner is confined)

On October 29, the State's highest Court docketed the petitioner in the State's second highest Court, the Single Justice, Lowy, J., "For Suffolk County." [See, Appendix 9, p. 1] which that Court included an "Order Of Transfer" to Worcester Superior Court, apparently to abuse the petitioner some more. [Id., p. 2]

The petitioner is "in custody" at the Norfolk Colony Prison. 28 USC §2241(c)(3); Spencer v. Kemna, 523 U.S. 1, 7 (1998)("in custody" requirement satisfied as long as petitioner is incarcerated when petition is filed); Leitao v. Reno, 311 F.3d 453, 455 (1st Cir. 2002)

Despite not challenging his conviction for Rape because that sentence is already completed from 2004,

Recon                          -5-                    Putnam

the petitioner is confined under a different con-
viction, Home Invasion, which he does not challenge
either, but is in custody. Carafas v. LaValle, 391
U.S. 234 (1968)

Because the petitioner challenges his confinement
under the "abuse of discretion" by the Court violation
and the Prosecutorial Misconduct Doctrine, his remedy,
based on his actual innocence is habeas corpus. See,
Herrera v. Collins, 506 U.S. 390, 400 (1993)(independent
constitutional violation by the State allows cognizable
claim of innocence)

As delineated in petitioner's State Petition For
A Writ Of Habeas Corpus, the Worcester Superior Court
and the Single Justice's decisions, not on the merits
of the claim, Slack v. McDaniel, 529 U.S. 473, 484-485
(2000), were contrary to, or involved an unreasonable
application of, clearly established Federal Law, as
determined by the Supreme Court, or based on an un-
reasonable determination of the facts.

Recon                        -6-                        Putnam

The petitioner, in the Petition For A Writ Of
Habeas Corpus, cited specific Federal constitutional
and statutory provisions in the exhaustion to the State's
highest Court. [Petition, pp. 3-13]  The State's highest
Court has not addressed the claim in a written opinion,
Dye v. Hofbauer, 546 U.S. 1, 3 (2005)(failure of the
State's highest Court to mention the Federal claims
does not mean the claim was not presented to it)

The Assistant District Attorney ("The Commonwealth")
Donna-Marie Haran was served a copy of the Petition. Her
arrogance, as a friend of the Court, excused her from
filing a response to the Petition.

There were no "invalid prudential" or "procedural
reasons" given to the petitioner for the refusal by
Justice Lowy to apply the Full Faith & Credit Statute,
28 U.S.C. §1738, Matsushita elec. Indus. Co. v. Epstein,
516 U.S. 367, 369 (1996), on the Federal law and the
Supreme Court law presented by the petitioner.

In Commonwealth v. Putnam, 481 Mass. 1045 (2019)

[Appendix One, pp. 1-4] the State's last reasoned de-
cision was 1) the defendant's motion satisfied the
G.L. c. 278A §3(b)(4) threshold burden for forensic
testing, and 2) that there was no comment on the de-
fendant's "likelihood of success." [Id., p. 3]

The Supreme Judicial Court ordered:

> "more specifically, here the defendant
> will need to demonstrate that the analysis
> has the potential to result in evidence
> that is material to proving that no crime
> occurred." [Appendix One, p. 4]

In Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991)
it was held that where the State's highest Court, as in
Putnam, 481 Mass. 1045 (2019), reached the merits of
the claim, the Federal Courts may consider the claims.
The opinion Putnam is not ambiguous, or dismissed on
procedural grounds.

There can be no "presumption of correctness"
when the Supreme Judicial Court ignored the G.L. c.
248 §1 claim, relegated it to a Single Justice of the

Recon                        -8-                Putnam

County Court, who then ignored the Federal claims and
transferred it to the very Court which had abused its
discretion every step of the way since the Putnam
decision.

In the petition, the petitioner presented questions
of Federal law and mixed questions of law and fact to
the State's highest Court. Miller v. Fenton, 474 U.S.
104, 114 (1985); Levasseur v. Pepe, 70 F.3d 187, 191
(1st Cir. 1995)(presumption of correctness not accorded
to State Court's consideration of certain claims of the
petitioner and waiver of procedural default because of
legal question)

Failing to provide the discovery of the State
Laboratory's testing of the tunic (sweater) when they
received it for testing in January 2004, after the
complaining witness testified at trial there was blood
on the tunic, is a Constitutional violation under Brady
v. Maryland, a structural defect which requires the
release of the prisoner.

If the reasonable factfinder found out there was

no blood on the tunic (sweater), that the witness had
lied under oath, this is clear and convincing evidence
of reasonable doubt which may have led to acquittal.
Lopez v. Massachusetts, 480 F.3d 591, 594 (1st Cir.
2007)(defendant's Brady reviewed under deferential
§2254(d) standards of mixed questions of law and fact
subject to review)

    This Court knows an evidentiary hearing should
have taken place already in the Worcester Superior Court,
because the petitioner has developed facts which would
foster more relevant facts at such a hearing. Williams,
v. Taylor, 529 U.S. 420, 437 (2000); Pike v. Guarino,
492 F.3d 61, 69 (1st Cir. 2007)(petitioner entitled to
evidentiary hearing because he presented extensive evi-
dence in State Court)

## Conclusion

    For the reasons stated above, in fact and law,
the Full bench must review the Single Justice Lowy's
preferential reward to the Commonwealth for no  stated
reason.

Recon                          -10-                    Putnam


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS

EIGHTH DAY OF NOVEMBER, TWO THOUSAND TWENTY ONE,

November 8, 2021          /s/ _____
                              Steven M. Putnam, Pro Se
                              Box 43,
                              Norfolk, MA 02056

Certificate of Service:
I hereby certify that I mailed a true copy of the above
Verified Motion For Reconsideration to Donna-Marie Haran,
ADA, 225 Main Street, Worcester, MA 01608 on 11/8/2021.

Exhibit N

# The Commonwealth of Massachusetts

## SUPREME JUDICIAL COURT

### CLERK'S OFFICE FOR THE COMMONWEALTH

#### JOHN ADAMS COURTHOUSE
ONE PEMBERTON SQUARE, SUITE 1400
BOSTON, MASSACHUSETTS 02108

FRANCIS V. KENNEALLY, CLERK
(617) 557-1188

December 9, 2021

Steven M. Putnam
PO Box 43
Norfolk, MA 02056

    RE: <u>Letter received on December 6, 2021</u>

Dear Mr. Putnam:

    Thank you for your recent letter wherein you contend that this clerk's office "did not assign a docket number" for your motion for reconsideration. This office did not receive your motion for reconsideration. I assume that you sent it to the appropriate place, which would be the Supreme Judicial Court for Suffolk County. This office would not have been the appropriate place for your motion for reconsideration because your case was not decided by the full court. Rather, your case was decided by a single justice. The clerk's office for the full court would assign a new docket number after a petitioner files a notice of appeal with the Supreme Judicial Court for Suffolk County, which then sends the assembled record to this office. Because no notice of appeal was filed there, this office did not receive the assembled record in SJ-2021-0387.

    Very truly yours,

    Francis V. Kenneally

FVK/

Exhibit O

Mr. Francis V. Kenneally                    Steven M. Putnam
Clerk of the Court                          Box 43,
Supreme Judicial Court                      Norfolk, MA 02056
1 Pemberton Sq. 1400
Boston, MA 02108-1724                        December 20, 2021

RE:   Verified Motion For Reconsideration
      To The Full Bench, Justices Budd,
      Gaziano, Cypher, Kafker, Wendlandt,
      and Georges, Jr.

Dear Clerk Kenneally:

I received your letter of December 9, 2021 on
December 18, 2021.

You claimed your office did not receive the
above motion, which was filed in the Supreme Judicial
Court on November 8, 2021.  A reasonable person could
conclude that because you received the December 2,
2021 letter requesting a Docket Number, mailed with
the same address as the Verified Motion, that there
may be something wrong with the mail.

What I was asking the Supreme Judicial Court was
to reconsider assigning the case to the Single Justice
in the first instance, who then transferred it to
the very Court which had abused its discretion in
all its previous adjudications, and denial all relief,
it was an exercise in futility to transfer the case.

Kenneally                    -2-                    Putnam

This is especially true where I told the Supreme
Judicial Court that I was exhausting my State remedies
prior to filing in the Federal District Court, because
the State had already exhibited misconduct, both in
the Courts and by the Commonwealth's attorneys.

Please give the Verified Motion For Reconsidera-
tion To the Full Bench to the full bench for its lucu-
bration.  The Court should pay particular attention
to the violations of the United States... Supreme Court
decisions and relevant Federal law.

                              Very truly yours,

                              Steven M. Putnam, Pro Se


C O P Y              C O P Y              C O P Y